MELANCON'S WIDOW *vc.* HIS EXECUTOR ET ALS.

APPEAL FROM THE COURT OF PROBATES OF THE PARISH OF ASCENSION.

6L 105
f52 871

Where the husband died worth five thousand dollars, having bequeathed to his widow a slave and child, and the heirs having abandoned to her the household furniture, held she was entitled to the marital portion.

A legacy made by the husband to his wife, must be deducted from the amount of the marital portion to which she may be entitled.

Narcisse Landry, as testamentary executor of the late Paulin Melançon, rendered his account to the Court of Probates for the parish of Ascension, praying that all parties interested might be cited, that his account might be homologated, the payments be made in accordance therewith, and he be discharged.

Adelaïde Denous, widow of the testator, opposed the homologation of the account, because she had not been placed thereon for the fourth of the testator's property; she having brought no dowry, and he having died rich and childless, leaving her in necessitous circumstances.

The executor denied that the testator had died rich, leaving her in necessitous circumstances, and required of the widow strict proof of these allegations.

The heirs joined in this denial, averred that if she had been entitled to the marital portion, she had forfeited that

EASTERN DIS.
December, 1833.

MELANCON'S
WIDOW
vs.
HIS EXECUTOR
ET ALS.

right by improper conduct, and pleaded that if she were still entitled to it, there should be deducted whatever she had received from the decedent by legacy or otherwise.

*Babin* testified that the widow brought no dowry to the marriage. On her husband's death she had the means of living, that the moveable property of the community, which the heirs had left to her; was worth at least one hundred and fifty dollars. She had then no separate property. The negro woman and child bequeathed her were worth one thousand dollars, and could be hired out for ten dollars per month. Thinks a woman could live there for one hundred and twenty dollars a year. She lived better after than before her husband's death. The testimony of Babin was confirmed in the main by that of Gaudin.

The opponent offered in evidence the certificate of her marriage with the testator, a copy of the testament, the account filed, and the inventory and *procès verbal* of the community property.

The judge *a quo* decided the widow was entitled to the portion as claimed, but deducted therefrom the amount of the testator's legacy to her. She had judgement for the balance two hundred and twenty-one dollars and twenty-five cents.

She appealed. The appellees prayed the rejection of her demand for the marital portion.

*Nicholls* and *Isley*, for opponent and appellant.

1. The testimony shows the widow is in indigent circumstances, and is therefore entitled to the marital portion.

2. The judge *a quo* erred, in deducting the amount of the legacy to the wife.

3. By article 2359 of *Civil Code*, the wife is entitled to this portion, when the husband dies rich, she being in indigent circumstances. This portion consists of the fourth of the succession, in full property, where there are no children. So far the article is a substantive enactment, and is strictly applicable to appellant's case.

EASTERN DIS.
*December, 1833.*

MELANCON'S
WIDOW
*vs.*
HIS EXECUTOR.
EL ALS.

4. In the case of children, whose interest it was the policy of the aw to protect this portion, it is justly modified and reduced. This latter member of the article has no connection with the first, as shown by its punctuation, and from the propriety and justice of such distinction.

5. The construction contended for by appellants is strictly in accordance with the principles of justice. In case of children, their interest is protected; in case of none, the person, whom the deceased would have selected, could his will have been consulted.

6. The fact of the widow being in necessitouss circumstances, must be confined to the moment the succession was opened by the death of her husband. Her rights accrued *eo instanti*, and no subsequent liberality of the heirs and other circumstances could destroy her *vested* rights.

*Seghers, contra.*

1. The widow Paulin Melançon, is not entitled to the marital portion, unless she was left in *necessitous circumstances,* and her husband died rich. *La. Code, art.* 2359.

The evidence in this case, does not show either of those facts. The succession left by the husband, as appears from the account thereof, is inconsiderable. At the death of her husband, or immediately after the widow had the means of living, and did live, as confortably as whilst her husband was living, and in the same condition of life, as before her husband's death. She was in possession of a house, the slaves, bequeathed to her by her husband, and the same household furniture she owned in his life time. By her industry, both after her husband's death, she contrived to procure such commodities of life as she desired, in addition to what she strictly needed for her support. The evidence further shows, that the condition in life of both the husband and wife, was that of *poor planters*, obliged to support themselves, by personal manual labor, and that with respect to the condition of herself and her husband, when *both living* together she cannot be said to have been left in *necessitous*

EASTERN DIS.
December, 1833.
═══════════
MELANCON'S
WIDOW
vs.
HIS EXECUTOR
ET ALS.

circumstances, at his death. What might have been neces-
sitous circumstances in the case of a lady born in wealth and
affluence, and whose husband should have been a man of a
high rank in life, and a man of fortune cannot be consi-
dered as such, in the case actually before the court.

The article 2359 of the *La. Code*, is taken from Spanish
law on the subject, and originally from the *Novellæ of Jus-
tinian*, and the *Authencica Præterea, ea. C. unde vir et uxor*, in
the Roman law. The intention of the law is evidently that
the widow should enjoy, after the death of her husband, a
rank and condition in life, suitable to her former estate.
The reasons of the law are perfectly explained in the
*Répertoire de Jurisprudence, Merlin, Verbo, Quarte de Con-
joint Pauvre. No.* 1. See also *Encylopédie de Jurisprudence.
Verbo, Quarte de Conjoint Pauvre.*

To entitle the widow to the marital portion, she must be
after her husband's death, *actually in necessitous circumstances,*
considering *her former condition of life.* See *ibd., Merlin* and
*Encyclopédie Méthodique. Febrero,* commenting on the Spanish
law, which was derived from the same source, goes further,
and says: *Part.* 1, *chap.* 1, *sec.* 9, "quando las mugeres siu-
das quedan tanpobres, que *nada tienen,* con que alimentarse,
y sus hijos Ricos, por haber heredado de sus padres *mucha
hacienda,* pueden llevar la quarta parte de los bienes pater-
nos, que sus hijos deben heredar. *Leg.* 7, *tit.* 13, *Partida,* 6.

2. If the widow be entitled to the marital portion, she is
bound to include in that portion, what has been left to her
as a legacy, by her husband.

The article 2359th of the *La. Code,* "IN FINE," is express
on that point, and if there can be any doubt on the meaning
of the law, arising from ambiguity in the wording or in the
punctuation, that meaning must be gathered from the whole
tenor of the law, and the evident intention thereof. Incivile
est, nisi tota prespecta, una aliqua particula ejus proposita,
judicare vel respondere. *L.* 24, *ff. De legb.* Verbum *ex legi-
bus,* sic accipendum est, tam ex legum *sententià, quam exverbis,
L.* 6, *sec.* 1, *ff. de Verb. sigu.* Etsi maxime verba legis hunc
habent intellectum, tamen *Meus* legislatoris, aliud vult. *L.* 13,

EASTERN DIS.
December, 1833.

MELANÇON'S
WIDOW
vs.
HIS EXECUTOR
ET ALS.

*sec.* 2, *ff. de excus. tutor.* *Donat,* says: "Pour bien entendre le sens d'une loi, il faut en peser tous les termes et le préambule, lorsqu'il y en a, afin de juger de ses dispositions par ses motifs, et par toute la suite de ce qu'elle ordonne, et ne pas borner son sens, à ce qui pourrait paraître différent de son intention, ou dans une partie de la loi tronquée, ou dans le défaut d'une expression. Mais il faut préférer à ce sens étranger d'une expression défectueuse, celui qui parait d'ailleurs évident, par l'esprit de la loi entière. Ainsi c'est blesser les *régles* et l'esprit des lois, que de se servir, ou pour juger, ou pour conseiller, d'une partie détachée d'une loi, et détournée à un autre sens, que celui que lui donne sa liaison au tout. *Domat, Lois Civiles, livre prelim. tit.* 1, *sec.* 2, *sec.* 10. See also, *Traité des Lois, chap.* 12, *paragraphes* 7, 8 *et* 9.

"Il s'ensuit de cette remarque de l'esprit de la loi et de son motif, que s'il arrive que quelques termes, ou quelques expressions d'une loi paraissent avoir un sens différent de celui qui est d'ailleurs évidemment marqué par la teneur de la loi enttère; il faut s'arrêter à ce vrai sens et rejeter l'autre qui parait dans les termes, et qui se trouve contraire à l'intention. Il s'ensuit encore, que lorsque les expressions des lois sont défectueuses, il faut y suppléer pour en remplir le sens selon leur esprit."

That the intention of the law, is that *in every case the survivor is bound to include in the marital portion, whatever has been left to him as a legacy by the husband or wife who dies first,*" is evident from the fact, that, were it not so, the wife might very often claim and receive the greater part of the succession of her husband, should he die without children, and she happened to have brought no dowry for she might receive in *particular legacies,* property to the amount of one half of his estate or of a quarter proportion thereof, which added to the *marital portion,* one fourth, would give her three-fourths, or a still greater part of the succession. In all the different cases, decided in France, in the provinces governed by the Roman law, prior to their repeal, which cases are found in *Merlin, Répertoire de Jurisprudence, Verbo, Quarte de Conjoint Pauvre,* it was held, that the wife claiming the marital portion, was

EASTERN DIS. bound to include therein whatever had been received from
*December,* 1833. the predeceased husband by legacy, or otherwise. *See No.* 2.
MELANCON'S *Verbo. Quarte de Conjoint Pauvre, Merlin.*
WIDOW
*vs.*
HIS EXECUTOR MARTIN, J., delivered the opinion of the court.
ET ALS.

The widow complains of the judgment before us, because
the court compelled her to suffer the deduction of a legacy
left to her by her husband, from the marital portion of his
estate, to which she successfully urged her claim. The exe-
cutor complains of the judgment also, because it supports
the claim to the marital portion.

As if this court be of opinion that the marital portion
ought not to have been allowed, it will not be necessary to
inquire whether the legacy was properly deducted, it is best
to examine at first, the validity of the claim to the marital
portion.

It is grounded on the *La. Code,* 2359, and it is resisted
on the absence of evidence, in regard to two essential facts,
viz: that her husband died *rich,* and that he left her in
*necessitous circumstances.*

On these two questions no one could possess better infor-
mation, than the judge of Probates, who made the inventory
and presided at the settlement of the estate. It appears that
after the payment of all the debts, there was a sum of
upwards of five thousand dollars for the heirs. The wife
brought no dowry, and at her husband's death had no sepa-
rate property. The terms *rich* and *necessitous circumstances,*
are to be taken relatively. If the husband leaves five
thousand dollars clear of debts, and the wife has no special
property, then the Court of Probates may correctly assume
that the husband died rich, because he was so if compared
with the wife, and she in necessitous circumstances, having
nothing, if compared with the husband. It is true two wit-
nesses think that as the husband left to the wife by will a
female slave and child, and the heirs abandoned to her the
household furniture, she might support herself by her labor
and that of these slaves; but the slaves may die or other-

*When the hus-*
*band died worth*
*5000 dollars, hav-*
*ing bequeathed to*
*his widow a slave*
*and child, and the*
*heirs having a-*
*bandoned to her;*
*the household*
*furniture, held*
*she was entitled*
*to the marital*
*portion.*

wise become useless, and her services insufficient. It appears to us the court did not err in supporting the claim to the marital portion.

This leads us to the examination of the obligation of the wife to suffer a deduction of the amount of the legacy, valued at one thousand dollars from her marital portion.

In this we concur also with the Court of Probates. If a husband leaves to his wife nominatively one fourth of his estate, she certainly may not claim one half *i. e.* one fourth for the legacy, and one fourth for the marital portion. If he leaves her an annuity sufficient to enable her to live in the same style as to comfort, and elegance as persons of her rank live in; then she is not left in *necessitous circumstances,* so if she have the means of doing so, independently of her husband.

. When the husband is rich and the wife in necessitous circumstances, whatever he leaves by his will be considered by the courts, as left in compliance with his obligation to leave her one fourth of his estate,

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed with costs.

EASTERN DIS.
*December,* 1833.

A legacy made by the husband to his wife, must be deducted from the amount of the marital portion, to which she may be entitled.