No. 9855.

SUCCESSION OF MRS. CHARLOTTE PIFFET.—ON CLAIM FOR THE
MARITAL FOURTH.

In a contest over the claim of a survivor for the marital portion out of the succession of the surviving husband or wife, the plea of prematurity is not good if the judicial demand for the portion is made after the presentation of a final account of administration by the executor, although circumstances subsequently occurring may prevent an absolute decree fixing the precise amount of the marital portion.

If the survivor is in necessitous circumstances independently of the legacies which the deceased has left him, he is not debarred of his right to claim the marital portion, but in such a case he is bound to include in this portion what has been left to him as a legacy by the deceased. C. C. Art. 2382.

The indebtedness which the survivor owed to the deceased, and from which he has been released and discharged by the will, is not a legacy within the meaning of Art. 2382, to be deducted from the portion accruing to the survivor.

The right to claim and receive the marital portion is transmissible by inheritance, if the surviving spouse, who had made judicial demand therefor, dies before rendition of judgment on his demand.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

---

*J. Ad. Rozier* and *Jos. P. Horner* for Plaintiffs and Appellees:

I.

The surviving husband or wife takes the marital fourth as heir; the jurisprudence denominates it an inheritance. Dunbar Heirs, 5 Ann. 159; Connor vs. Connor, 10 Ann. 451-450; Gee vs. Thompson, 11 Ann. 657; Foster vs. Ferguson, Tutor, 1 Ann. 262. The

wording of the Art. 2382. C. C., he or she has a right to take out of the succession of the deceased the fourth of it, in full property, an absolute ownership regulating descent, not an action of creditor against succession. 27 Ann. 594; 7 N. S. 342.

## II.

The heir who accepts is considered as having succeeded to the deceased from the moment of his death, 947 C. C., and he transmits the succession to his own heirs, C. C. 944, and is authorized to institute all the actions which the deceased had a right to institute, and to prosecute those already commenced. 945, C. C. "Sans être tenu de fournir d'autres preuves que les preuves que l'on pouvrait exiger du défunt." Laurent, vol. 9, §§ 215, 216. The son and grandson of John Baptiste Piffet, Sr. (who was surviving husband, now deceased), succeed to all the rights of the latter. 943 C. C. They have been recognized as heirs, and as such put in possession.

## III.

Homestead law must not be confounded with the marital fourth. The latter is not a charity or bounty. The status of the surviving husband or wife is that of heir. Art. 2382 C. C. The phraseology of the Spanish laws, from which this right comes to us directly, is "*heredar, herencia.*" Gutierrez, vol. 11, pp. 638–39. Gomes, "*tunc succedit cum liberis communibus, in quarta parte, bonorum uxoris.*" Melançon, 6 La. 115; Succession of Fortier, 3 Ann. 104.

## IV.

The régime of separation of property and exclusion of community are not exclusive of the right to the marital portion; no antagonism. The Article 2382 C. C. is a law of descent. The proper spheres of each are marked; both harmonize.

## V

This claim is not premature. The universal legatees, who are also legatees under a particular title, have caused themselves to be put in possession of their respective legacies under particular title. Where heirs have received a special amount of money or property, which they detain without any such settlement, no previous liquidation necessary; an estoppel. Durian vs. Doiran, 9 Rob. 101; 7 Ann. 263; 8 Ann. 488; Harrell vs. Harrell, 17 La. 379. Besides, the executors caused the residuum of the properties to be sold for the very purpose of effecting this settlement, and thus the estate is converted into cash, on deposit in bank. The succession is rich, debts paid, final tableau of distribution filed, wherein the executor asks to turn over to the heirs the property and assets, and specially prays to be discharged from this trust as executor. The succession is thus actually liquidated; the marital portion can be claimed by way of opposition. Succession of Leppleman, 30 Ann. 468. Nearly all the heirs are absentees. 2 N. S. 447; 13 La. 298; 6 Ann. 152; Confl. Laws, § 1513; 3 Pickens, 128.

## VI.

The remission clause in the will is not to be considered as a donation, or something to be taken on account, or to be taken in deduction of the marital fourth. 2130 C. C. and Marcardé, Vol. 4, Nos. 414, 598. Besides, the evidence shows that the deceased husband was not indebted to the *de cujus.*

## VII.

Inventory not conclusive as to value of merchandise. There is error in valuing it at more than $2000. Suc. Deane, 33 Ann. 867; 12 Ann. 760; 1 Ann. 230.

## VIII.

The evidence shows clearly that the deceased husband was left in necessitous circumstances. C. C. 2382.

## *T. Gilmore & Sons* for Defendants and Appellants:

1. Where the parties were married under the régime of separation of property and exclusion of community, and each renounced all right upon the property of the other, the

survivor cannot claim the marital portion; such claim would be in derogation of the marriage contract, which is the law of their union as to property and must be observed. C. C. 2325; Boileux Com. on Arts. 1536 to 1539, French Code; Marcadé, Art. 1536, Vol. 6, p. 12; Troplong Cont. de Mar., Vol. 3, p. 761; Pothier Communauté, No. 464; Laurent, Vol. 23, p. 443.

2. Article 2382 C. C., which provides that " when the wife has brought no dowry, or what she has brought is inconsiderable with respect to the condition of the husband, if either die rich, leaving the survivor in necessitous circumstances, the latter has a right to take out of the succession of the deceased what is called the marital portion," does not apply to the case of husband and wife who, at the time of marriage, stipulate for separation of property and exclusion of community, and are in opulent circumstances. Succession of Leppelman, 30 Ann. 468, and authorities there cited; see also, Armstrong vs. Steeher, 3 Ann. 713.

3. A husband, who having arrived at the age of 85 years, being free from debt, a legatee of his deceased wife of a usufruct worth $2500 or $3000 a year, of merchandise worth $5389.69, and is liberated from the payment of his debt to the wife, is not left by the death of his wife in necessitous circumstances within the meaning of Article 2382 C. C.

4. The husband, dying before the succession of the wife is liquidated and before his claim to the marital portion is established, does not transmit his rights to his heirs. The obligation on the part of the wife to support the husband is personal. C. C. Arts. 2000–2004, 119; Vasseur vs. Dupré, 8 Ann. 488; McCoy vs. McCoy, 26 Ann. 687; Succession of Robertson, 28 Ann. 832; Succession of Durkin, 30 Ann. 669.

5. The surviving husband or wife entitled to the marital portion "is bound to include in this portion what has been left to him as a legacy by the husband or wife who died first." C. C. 2382; Melançon's Widow vs. His Executors et al., 6 L. 111; Succession of Derouen, 10 Ann. 675.

6. "Until the succession is liquidated, it is impossible to ascertain whether the wife died rich, and unless she did and the husband is shown to be in necessitous circumstances, the marital portion is not due." Vasseur vs. Dupré, 8 Ann. 488; Duriaux vs. Doiron. 9 Rob. 103; Melançon's Widow vs. His Executors, 6 La. 110; Harrall vs. Harrall, 17 La. 376,

*T. J. Semmes & Legendre, J. O. Nixon, Jr., L. L. Levy,* and *J. Q. A. Fellows,* on the same side.

The opinion of the Court was delivered by

POCHÉ, J.   This controversy involves the right of J. B. Piffet, husband of the deceased, to claim the marital portion out of her succession, and the right of his heirs at law to set up their claim thereto as an inheritance from him.

The affirmative of both these propositions was maintained by the district court, and the present appeal is prosecuted by the executor and by legatees under the will of the deceased.

The claim is predicated on the provisions of Article 2382 of the Civil Code, which reads as follows:

"When the wife has not brought any dowry, or when what she has brought as a dowry is inconsiderable with respect to the condition of the husband, if either the husband or the wife die rich, leaving the sur-

Succession of Piffet.

vivor in necessitous circumstances, the latter has a right to take out of the succession of the deceased what is called the *marital portion;* that is, the fourth of the succession in full property, if there be no children, and the same portion, in usufruct only, when there are but three or a smaller number of children; and if there be more than three children, the surviving, whether husband or wife, shall receive only a child's share in usufruct, and he is bound to include in this portion what has been left to him as a legacy by the husband or wife who died first."

Mrs. Charlotte Piffet died on January 17, 1884, and her will was admitted to probate on the twenty-first of the same month. She left no issue, and her will contained numerous bequests intended as a full disposition of her estate, which was inventoried at $417,027.87.

In her will she bequeathed to her husband a certain stock of goods valued in the inventory at $5,389.69, and the usufruct, during his lifetime, of two pieces of immovable property, producing together a rental averaging $250 a month; and she released and discharged her said husband from all indebtedness which he owed her, which indebtedness was appraised in the inventory at the sum of $65,382.37.

The record shows that the two spouses were separate in property by marriage contract.

Some time after judicially claiming the marital portion, J. B. Piffet, the surviving husband, died, and his sole heirs, Adolph Piffet, his son, and J. B. Piffet, Jr., his grandson, renewed it, and they are appellees before us in this litigation.

The district judge found all the facts required by law to entitle the surviving husband to claim the marital portion as well as his heirs to claim under him, and in his judgment, he directed that the amount of indebtedness from Piffet to his wife be deducted from the active mass of the succession, and that one-fourth of the remainder after deducting the debts, (which are insignificant) be set apart as the marital portion, subject to deduction therefrom of the value of the stock of goods bequeathed to the husband as above stated, and of the amount received by him under his usufruct of the two pieces of immovable property, as stipulated in the will.

After a thorough consideration of the case we have reached the conclusion that the judgment of the district court is correct in every particular, and we shall therefore affirm it.

Under our understanding of the pleadings, the issues presented involve a discussion of the following points:

1. Was this demand premature?
2. Was J. B. Piffet entitled to the marital portion?

3. Having died before he realized it, did he transmit his right to his heirs at law?

4. Is the testamentary disposition of Mrs. Charlotte Piffet, touching her husband's indebtedness to her, a legacy within the meaning of Article 2382 of the Civil Code, and should the amount thereof be as such deducted from the marital portion?

I.

The contention that the demand for the marital portion is premature is answered by the record itself, which shows that it came up by way of opposition to the final account of administration presented by the executor, who proposed therein to wind up the succession, and to distribute the whole estate under the terms of the will, without recognizing the right of the surviving husband to the marital portion.

It also appears from the record that by far the greater portion of legacies under particular titles had been delivered, that the remaining property of the succession had been sold, and that the executor had in hand cash funds exceeding one-fourth of the entire amount of the succession, after deduction of the husband's indebtedness which had been extinguished by the testatrix.

If at that juncture, which to our minds was the most propitious for action on the part of the surviving husband, his demand can be deemed premature, it would be difficult to conceive at what period the same objection could not be successfully urged.

It is true, as suggested by appellant's counsel, that when the judgment was rendered below, the condition of affairs was not such as to allow the court to fix in figures the precise amount of the marital portion, but this is owing to a circumstance which cannot affect the legal status of Piffet's demand, as it is due to an incident, which occurred after the institution of his judicial demand, in the shape of a suit by a party setting up ownership to a piece of valuable immovable property which formed part of the succession of the deceased.

But for that unforeseen complication, the succession was practically liquidated, sufficiently to allow the court to precisely determine the amount of the marital portion.

Such was not the condition of the cases presented in the authorities on which appellants place their reliance on this point. Harrell vs. Harrell, 17 La. 376; Durieux vs. Doiron, 9 Rob. 101; Vasseur vs. Dupré, 8 Ann. 488.

The rule adopted in those cases is that the succession must have reached a point in its settlement at which it may be shown that the

deceased died rich, and that the survivor is in necessitous circumstances. Those two essential facts are glaring in this record.

## II.

And they are the two questions which properly come up under the second point of the discussion.

In this connection the record shows to our entire satisfaction that Mrs. Charlotte Piffet left an estate appraised at a sum exceeding four hundred thousand dollars, all her separate property without debts; that she had brought no dowry, and that she left no descendants, leaving a will by which she disposed of all her property; that at the time of her death her surviving husband, who had met with great disasters in his business, had no property or other resources from which he could derive any income, and that he was over eighty years of age.

Under such a showing, we feel no hesitation in concluding that she died rich, that he was left in necessitous circumstances, and that his case combined all the circumstances required by the article of the Code to entitle him to the marital portion.

But the pivotal contest on this point is found in the argument of appellants' counsel, that with the legacies left him by the deceased, the surviving husband had an income sufficient for his maintenance, even becoming the condition and style of life which he had led during the marriage.

Their contention seems to be that the condition of the surviving spouse, in a contest for the marital portion, must be tested under the effect of his or her circumstances, created by the testamentary dispositions in his or her favor, contained in the will of the deceased.

The proposition might be maintained in a case where the deceased had bequeathed to the survivor an amount equal to one-fourth of the whole succession, as in such a case the marital portion added to the legacies, would vest one-half of the succession in the survivor, to the detriment either of the collateral heirs or of the legatees of the deceased.

The proposition is therefore relatively, but not absolutely correct: and it manifestly has no application to this case in which the amount of the legacies to the survivor is avowedly insignificant when compared to one-fourth of the amount of the succession.

When levelled at the position of appellees in this case, the argument is answered by the very text of the article.

It provides in unqualified terms that the surviving spouse, who is in other respects entitled to the marital portion, "is bound to include in.

this portion what has been left to him as a legacy by the husband or wife, who died first." The article does not contemplate any exception based upon the value or amount of the legacy when compared to the value of the marital portion, as a condition to claim the marital portion, and its proper construction does not bear an interpretation which would defeat the claim for the marital portion, by the consideration that, with what was left as a legacy to the survivor, he could derive an income sufficient to maintain him in the rank or condition which he enjoyed during the marriage.

Thus in a case in which the marital portion might amount to $100,000, a legacy to the survivor equal to the sum of $50,000, would not bar him from claiming the marital portion in a case in which it would be one-fourth of the succession. The practical meaning of the text would require him to include the legacy in making up the portion, hence he would take $50,000 under the will, and $50,000 under the effect of the law.

As this law finds its source in a noble quality of the human heart, and its sanction in a laudable desire to provide a suitable position for the surviving spouse of a rich consort, so as not to throw on the cold charities of the world a person who had hitherto held a high rank, and had enjoyed the advantages of wealth, the principle which it embodies has always met with a liberal construction by the courts of all the systems of laws which have enacted a similar provision.

Such were the characteristic features of the decisions rendered by the tribunals of that part of France which followed the Roman law previous to the adoption of the Code.

Several interesting cases, too long to be recited in this opinion, are reported by Merlin in his " Répertoire de Jurisprudence, Verto Quarte de conjoint pauvre."

The same spirit prevails throughout our own jurisprudence. In one of the earliest cases, Melançon's Widow vs. His Executor, 6 La. 105, this Court was called to deal with the two questions, namely: the right of the survivor to the marital portion, and the effect of a legacy in her favor on her alleged necessitous circumstances. The net assets of the succession amounted to $5000, the value of the legacy to the wife was $1000—and the court granted the marital portion subject to the deduction of the legacy. This is precisely the rule which the district judge followed in the instant case, and which we propose to enforce.

In the case of the Succession of Fortier, the surviving husband was allowed the marital portion of a succession amounting to $26,000, although he owned property valued at $1100. 3 Ann. p. 104.

It is very clear to our minds that if the law-maker had intended the consideration of the amount of the legacy left to the surviving, by the deceased, spouse, as a condition of his title to the marital portion, he would certainly not have provided that the value of the legacy could have had no other effect but to decrease *pro tanto* the amount to be received as the marital portion.

We therefore hold that the legacies left by Mrs. Piffet to her husband did not affect the condition of the necessitous circumstances in which he was left at the time of her death, so as to debar him of his marital portion out of her succession.

### III.

But, it is argued, as J. B. Piffet died before judgment was rendered on his judicial demand for the marital portion, the right which he was seeking to enforce and which was personal to himself has perished with him, and therefore his heirs cannot be heard to claim any benefit to themselves thereunder.

It is argued that the provision of the article simply contemplates a bounty, and that with the death of the beneficiary, the reason of the law ceasing, the law itself becomes a dead letter.

We must first inquire into the real nature of the right conferred in the text itself. We there find the following language: "The latter (the survivor) has a right to take out of the succession of the deceased what is called as the *marital portion*, that is, *the fourth of the succession in full property*, if there be no children." * * Does language, as plain and as unambiguous, bear any other construction but that which the words used import in their ordinary signification? Can the language of the article be made to mean anything else than the creation of a conditional forced heirship?

It cannot be made to mean otherwise than that the surviving spouse, left in necessitous circumstances at the death of his consort who has died rich, is vested at his option with the full ownership of one-fourth of the succession of the deceased, if there be no children.

Conceding, as the appellant contends, that the controlling object of the law-maker was thereby to provide the survivor with the means *bene et honeste vivere*, it appears clear to our minds from the language used that, so anxious and so eager was he to place that boon beyond the possibility of a doubt, or beyond the reach of discussion, that he did not take the pains to guard against the possibility, so strong in human events, of the death of the survivor before he could realize the benefit of the right thus conferred.

Having thus vested that one-fourth of the succession in the survivor

in *full property*, the law-maker could not, without infringing on the established laws of descent and inheritance, have placed any restrictions to the full ownership which he there contemplated and actually created.

A very material distinction is made in the article between the case where there are no children and that in which there are children. In the latter case the marital portion consists only of the usufruct, but in the former it vests in full property. It is an axiom in jurisprudence that when the law has made no distinction, courts can make none. Is it not as true that when the law does make a clear distinction, courts must in duty observe it? Our laws recognize no mode of abridging the full exercise of the right of ownership which they have once vested in any one.

It is not an unreasonable deduction from appellant's argument that if the right of Piffet to the marital portion perished with him, it must then have been merely a life-time usufruct; whereas, under the very terms of the law, it was a right of full property. Does not that reasoning tend to abrogate or obliterate the clear distinction which the article has made between the two different tenures or titles of use and enjoyment under the right of the marital portion?

The unmistaken tendency of our courts has been to interpret that provision according to the plain terms of the text, and hence the right to the marital portion in cases where there are no children has been designated as an inheritance. Ambercrombie vs. Caffray, 1 N. S. p. 1; Dunbar vs. Dunbar, 5 Ann. 158; Connor vs. Connor, 10 Ann. 440.

We therefore conclude that the right of J. B. Piffet to the marital portion, which he had judicially demanded, and which he was pressing when he was stricken by death, has been transmitted to his heirs at law.

## IV.

Conceding for the sake of argument that Piffet, and through him his heirs, have established their rights to the fourth of the succession, subject to the deduction of the legacy, appellants contend that the amount of Piffet's indebtedness to his wife, inventoried as above stated, at $65,382.37, and from which he was released in the will, should be included as a legacy and as such deducted from the marital portion.

Without undertaking to decide absolutely that such a testamentary disposition is not a legacy, which we think is the correct view, we hold that under the letter, as well as the spirit, of the Article 2382, such a release is not a legacy, the amount of which is to be deducted from the marital portion.

Under the interpretation advanced by appellants, circumstances of easy conception could in many cases entirely defeat the very object proposed by the enactment.

Such a circumstance is very nearly illustrated in this case. Under the judgment rendered below the amount of the marital fourth would be $87,911.38, and by subjecting it to deductions of the real legacy and of the indebtedness treated as a legacy, it would be reduced to $9,939.32, and it might be reduced to naught if it should happen that the indebtedness of the survivor was equal in amount to the fourth of the succession.

And thus the object of the law-maker in his attempt to place the survivor of a rich consort beyond the pangs of poverty and actual want would be entirely frustrated.

A legacy is defined to be " a bequest or gift of goods or chattels by testament;" it has also been extended to include real estates. "*Bouvier.*"

To every mind it carries the idea of a real affirmative advantage derived through the will or testament of a deceased person, and not the negative relief of being discharged from an obligation.

Speaking of the nature of the remission of a debt, Marcadé says distinctly that it is not a donation, because it transmits no right, but merely destroys a right in renouncing it. Marcadé, vol. 4, p. 598, § 787.

Coin-Delisle in his commentaries on donations and testaments holds the same doctrine. He says: " La remise de la dette, même faite uniquement pour obliger le débiteur, peut être un acte de bienfaisance, mais ce n'est pas en soi une donation, à moins que ce ne soit un profit d'un successible qui doit rapporter à la succession de son auteur tout ce qu'il en a reçu directement ou indirectement." P. 273, par. 14.

As the concluding words of the paragraph evidently refer to collations they suggest to our minds an analogy between the rights of an heir to be exempt from collating a remitted indebtedness which he owed to the ancestor, and that of the surviving spouse to deduct from the marital portion the amount of his indebtedness remitted in the will.

In the case of Austin vs. Palmer, 7 N. S. 20, the court dealt with a case in which the ancestor had gratuitously remitted a debt due to him by one of his children, and the court held the release good for the portion of the estate which the law leaves at the disposal of a parent.

It follows from that principle that if the creditor had not been held to the legally disposable portion, and had been as free in the disposition of his property as was the case with Mrs. Piffet, the release would have been held as complete and unconditional.

Such is the remission with which we are now concerned, and hence we hold that the indebtedness thus released or discharged, forms no part of the legacy within the meaning and intent of the provision of Article 2382.

In conclusion we note an argument made by appellants, grounded on the provisions contained in the marriage contract between Piffet and his wife.

It is contended that, by the stipulation of an entire separation of property, the spouses were mutually debarred of the right of claiming the marital portion. In view of the exceptional character of the legislation contained in the article of the Code, and of the sweeping provisions therein contained, manifestly intended to carry out a special object, we have not considered the argument as serious, especially as to sustain it appellants were almost driven to the necessity of denying that Mr. and Mrs. Piffet were husband and wife at all.

But the argument, even when strained to that extent, is fully met by the decision of this Court in the case of Geo vs. Thompson, 11 Ann. 657, in which the wife, although living separate from her husband under a decree of separation from bed and board, was allowed the marital portion.

Judgment affirmed.