[Civil No. 3391. Filed June 1, 1934.]

[33 Pac. (2d) 283.]

ARCHIE G. MAINE, as Administrator of the Estate of JOHN S. SUTTON, Deceased, Appellant, v. GREELEY H. CLACK and NELLE E. CLACK, Appellees.

Mr. Louis L. Wallace and Mr. Carl D. Hammond, for Appellant.

Mr. E. Elmo Bollinger, for Appellees.

LOCKWOOD, J.—Archie G. Maine, in his capacity as administrator of the estate of John S. Sutton, deceased, hereinafter called plaintiff, brought suit against Greeley H. Clack and Nelle E. Clack, his wife, hereinafter called defendants, on a promissory note in the sum of $9,000 secured by a mortgage on certain cattle and real estate in Mohave county. The case was tried to the court sitting with a jury, and judgment rendered in favor of defendants, and from the judgment this appeal is taken.

There are some seventeen assignments of error, but we think we need consider only the one that the judgment rendered is contrary to the evidence. The facts of the case, stated as favorably on behalf of defendants as the evidence will warrant, are as follows: In the year 1920 John S. Sutton, plaintiff's decedent, loaned to the defendants herein the sum of $14,000, evidenced by a certain promissory note and secured by a mortgage on cattle owned by the defendants. Sutton had also loaned some money to William Jones and to other cattle owners in Mohave

county about the same time. In 1923 the cattle business there was at a very low ebb, and Sutton came to Mohave county to see what the trouble was. He, Jones and Clack discussed conditions generally for some time, and Clack suggested selling the mortgaged cattle and turning the proceeds over to Sutton. The latter said, in substance, that he did not desire to take everything that Clack had, and suggested that if a sale were made the proceeds be divided two-thirds to Sutton and one-third to Clack. Finally the three discussed the question of letting one party take all the cattle in Mohave county on which Sutton had a mortgage, and handle them as one bunch in order to save as much expense as possible, but they could not agree as to who should assume that responsibility, and nothing came of the discussion; both Clack and Jones continuing to run their own cattle in the usual manner. At some time in the year 1923, but whether before or after the conversation referred to is not disclosed by the evidence, Jones received the following letter from Sutton:

"Mr. William Jones,
"Dear Sir:
"Your letter received. I am expecting you to go on with your business and do whatever you think best and sell and buy cattle just the same as if I had no interest in it. On account of the drouth and the way everything has been with you for the last three years that is the best way for me to do, so go your way as I have troubles of my own and probably in a few years things will be going good with you and we can divide up what you have from the cattle and ranch and range, and you take half and me half; for the way things is and have been I would not expect to hold you to or any where near what the notes and mortgage calls for, so do the best you can for yourself and me, that is all I can expect under the circumstances, as I am no hog as most people are.

I expect Mr. Clack to do the same but don't tell any one how I am dealing with you and him.

"I have helped others so much and lost and not made anything late years so that I cannot help any more without going in debt more, and I am in debt too much now and am not going to borrow any more.

"If you go to Northern California it is so far and expensive that you will not have much to go on after you get there. It's lots easier to lose money or wealth than it is to make it, and whatever you do be very careful. You cannot depend a word on what people say.

"I wish you better luck in the future. Good luck to all."

Jones said nothing to Clack in regard to this letter until after the execution of the note and mortgage on which this action is brought, nor does it appear that Clack had any knowledge of it before their execution.

About a year later, the cattle business still being depressed, Sutton executed the following instrument, which was duly recorded:

"Rand, Colorado.
"To Whom it may concern; I hereby this 29th day of October, 1924, release the Mortgage against Greeley Clack's ranch and cattle in Mohave County, Arizona which is on file with recorder of Mohave County, Arizona, at Kingman, Arizona. Dated about March 4th, 1920.

"I release said Mortgage so that Greeley Clack can sell the ranch or cattle or both as he thinks best to do so as to get the most out of said ranch and cattle, according to his judgment without me having any claim on them which I hereby release said claim to Greeley Clack.

"JOHN S. SUTTON,
"Rand, Colorado."

In the fall of 1927 Sutton died, and plaintiff was appointed administrator of his estate in Colorado,

Texas, California, and Arizona; the principal place of administration being Colorado. He proceeded to collect the assets of the estate, and in November of that year came to Mohave county and visited the Clacks. At that time there was due on the original note something over $20,000, including accrued interest, but it was unsecured. After considerable discussion it was mutually agreed between plaintiff and defendants that the debt would be cut down to $9,000 and a new note given, secured by a chattel mortgage on cattle and a realty mortgage on certain land, and the note and mortgage involved in the present action were duly executed and delivered. Some three or four months after this, for the first time Clack knew of the letter from Sutton to Jones above set forth, but took no action on account of it, and continued to make payments on the note during the years 1930 and 1931, amounting altogether to approximately $3,000 principal and interest. The last payment was made on November 14, 1931, and this suit was brought in April, 1932. The complaint was in the usual form to recover on a note secured by a mortgage. The answer contained a general denial and a special defense that the note and mortgage were obtained through fraud, compulsion, threats, undue influence and false representation. As a basis for the special defense defendants alleged: (a) That Sutton had offered to make a full settlement of the original indebtedness by selling the mortgaged livestock and dividing the proceeds in equal proportions; (b) that at the time the present note and mortgage were obtained, plaintiff knew that Sutton had released Clack from liability on the original indebtedness, and agreed to accept one-half of whatever could be realized as the proceeds from the sale of the cattle; and (c) that by reason of the various transactions the relationship between Sutton and the

Clacks had been changed from that of creditor and debtors to one of partnership.

There is no dispute in regard to the original indebtedness of $14,000, nor that it never was paid, or as to the giving of the present note and mortgage. Defendants rely upon the conversation between Jones, Clack, and Sutton in 1923, the letter from Sutton to Jones dated September 23, 1923, and the release of mortgage of October 29, 1924, to prove their special defenses. So far as the conversation is concerned it is obvious that in no way does this support defendants' theory of a release of debt, or a partnership. It is true that the question of reducing the indebtedness and the manner in which the interests of the various parties could be best protected were discussed, but the only witness who could testify to such conversation stated emphatically that nothing was ever done in pursuance of it, and the parties continued their relations as before. Further than that there is not the slightest suggestion of any consideration being given for the alleged promise of Sutton to accept in place of a fixed indebtedness, secured by a mortgage, an uncertain indebtedness amounting to two-thirds the value of the mortgaged property. We are of the opinion that as a matter of law the conversation referred to did not affect the original indebtedness in any manner.

Nor did the letter to Jones have the effect claimed by defendants. In the first place, the evidence is that Clack never saw nor heard of the letter until long after Sutton's death. In the next place, there is no statement therein that any definite arrangement had been made with Clack in regard to his indebtedness, but merely that Sutton expected Clack "to do the same" as Jones. This is far short of evidence sufficient to show that a new contract for a proper consideration had been made, and certainly does not

suggest, in the slightest manner, that Sutton expected to go into partnership in the cattle business with either Jones or Clack. The most that can be said is that Sutton, out of the kindness of his heart, forbore insisting on his rights at the time, and stated that when conditions improved he would be willing to accept half the value of the mortgaged property in settlement of his indebtedness. This is not a valid contract to release a debt.

Nor is this aided by the release of the original mortgage by Sutton. A mortgage is not a debt, but merely security for the payment of the debt, and the release of security in and of itself does not necessarily release the original indebtedness. *Sherwood* v. *Dunbar,* 6 Cal. 53; *Clark* v. *Smith,* 1 N. J. Eq. 121; *Sullivan* v. *Neary,* 186 Mass. 158, 71 N. E. 193. It will be noted the release does not, as in the usual form, state that the mortgage and debt secured thereby are *paid.* It expressly states the mortgage is released so that defendants can sell the mortgaged property, free of the lien of Sutton. It is a common practice in the cattle business for the mortgagee to grant permission to the mortgagor to sell mortgaged cattle notwithstanding the mortgage, for the purpose of continuing in the business and making payments on the indebtedness, but in the absence of a specific agreement to that effect a release of that nature is never considered a release of the debt itself.

We are of the opinion that the evidence does not support the claim of defendants that Sutton had made a legal contract to release any portion of the original indebtedness, or to enter into partnership in the business with either the Clacks or with Jones. Had he lived he could and perhaps would have made a voluntary release to both Jones and Clack for part or all of their indebtedness, but not having completed such a gift during his lifetime, his administrator was

not bound thereby, and indeed could not, had he wished, make a donation to the Clacks, from the estate of his decedent, even though he believed the latter would have done so had he lived.

Since the letter to Jones did not in any manner legally affect the original indebtedness, we think it was immaterial whether plaintiff knew of it before or after the Clacks executed a second note or mortgage, or whether he communicated its contents to them. He was not under any duty to do so, for no fiduciary relation existed between him and Clack, and the parties were dealing at arm's length. Such being the case, and the execution of the note and mortgage having sufficient consideration, to wit, the release of more than $10,000 of indebtedness, no defense appears in the record which would justify a judgment in favor of defendants.

We appreciate the unfortunate situation of the latter, due to the death of their intended benefactor. He undoubtedly did exercise, and was willing to continue to exercise, a generosity towards his debtors by no means common; but since he died before that generosity matured into a legal right, the administrator was bound to follow the law and to endeavor to secure as much for the estate of his decedent as possible, for he had not the authority to make a present from the estate to a third party.

For the foregoing reasons the judgment of the superior court of Mohave county is reversed, and the case remanded, with instructions to enter judgment in favor of plaintiff.

ROSS, C. J., and McALISTER, J., concur.