98 So.2d 109 (1957)
Lem HALEY
v.
James E. BADON.
No. 20909.
Court of Appeal of Louisiana, Orleans.
November 18, 1957.
*110 Gamble & Gamble, New Orleans, for plaintiff and appellant.
Jacob H. Sciambra, Gretna, for defendant and appellee.
McBRIDE, Judge.
This is an appeal by plaintiff from a judgment of the lower court maintaining defendant's exception of no cause of action and dismissing the suit for property damages to plaintiff's automobile accruing from a collision with defendant's vehicle on November 5, 1954. Besides the exception of no cause of action, the defendant had also interposed the exceptions of no right of action and res judicata, but these exceptions were overruled. Plaintiff has appealed.
It appears that both plaintiff and defendant were concerned in general with reference to the applicability of the Safety Responsibility Law of this state (LSA-R.S. 32:851 et seq.) in connection with the accident, and each was more particularly concerned with whether the Commissioner of Public Safety would suspend his automotive driver's license.
LSA-R.S. 32:872 provides in part as follows:
"A. If twenty days after the receipt of a report of a motor vehicle accident within this state which has resulted in bodily injury or death, or damage to the property of any one person in excess of one hundred dollars, the commissioner does not have on file evidence satisfactory to him that the person who would otherwise be required to file security under Subsection B of this Section has been released from liability, or has been finally adjudicated not to be liable, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments with respect to all claims for injuries or damages resulting from the accident, the commissioner shall determine the amount of security which shall be sufficient in his judgment to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against each operator or owner.
"B. The commissioner shall, within sixty days after the receipt of such report of a motor vehicle accident, suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, and if such operator is a non-resident the privilege of operating a motor vehicle within this state, and if such owner is a non-resident the privilege of the use within this state of any motor vehicle owned by him, unless such operator or owner or *111 both shall deposit security in the sum so determined by the commissioner; provided notice of such suspension shall be sent by the commissioner to such operator and owner not less than ten days prior to the effective date of such suspension and shall state the amount required as security. Where erroneous information is given the commissioner with respect to the matters set forth in paragraph (1), (2), or (3) of Subsection C of this Section, he shall take appropriate action as hereinbefore provided, within sixty days after receipt by him of correct information with respect to said matters.
"C. This Section shall not apply under the conditions stated in R.S. 32:873 nor:
"(1) To such operator or owner if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accidents;
"(2) To such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him;
"(3) To such operator or owner if the liability of such operator or owner for damages resulting from such accident is, in the judgment of the commissioner, covered by any other form of liability insurance policy or bond; nor
"(4) To any person qualifying as a self-insurer under R.S. 32:1042, or to any person operating a motor vehicle for such self-insurer."
Evidently neither plaintiff nor defendant carried liability insurance, and in their design to circumvent the suspension of their operator's licenses, they each agreed to file certificates as provided for in LSA-R.S. 32:872(A) with the Commissioner of Public Safety to the effect that the one had released the other from all liability for damages.
Such releases were executed on February 28, 1955, in the office of the attorney who now represents the defendant in this suit. Haley, the plaintiff, executed his release to defendant, Badon, in the following words and figures:
 "Release
(Safety Responsibility Law)
The Undersigned Hereby Certifies That he/she is of the age of 21 years or over and that he/she has released James E. Badon from all claims and causes of action of the undersigned arising from the above described accident, and authorizes the Department of Public Safety to accept this certification as satisfactory evidence of such release from liability as required by the Safety Responsibility Law.
Date Feb. 28, 1955 Lem T. Haley
 Box 280 Barataria
 Blvd.
 Marrero, La."
Badon, the defendant, executed an identical release unto Haley, the plaintiff. The signatures on the documents were duly acknowledged before a notary public and ultimately the releases were filed of record in the office of the Commissioner of Public Safety of Louisiana.
The defendant in support of his exception of no cause of action argues that the plaintiff has released him from any and all liability in connection with the accident. The plaintiff counters with the proposition that the release he signed was on a printed form supplied by the Commissioner of Public Safety and that his execution thereof did not actually amount to a compromise of his differences with defendant, but was merely for the purpose of leading the Department of Public Safety into believing that he had released defendant from liability. It is argued to us that the release so *112 executed and which defendant presents as a bar to the suit does not meet the requisites of LSA-C.C. art. 3071 relative to transaction or compromise.
The question raised by plaintiff-appellant whether the documents signed by the respective parties technically met the requirements of LSA-C.C. art. 3071 relative to transaction or compromise should not enter into the case, for the simple reason that the documents should not be placed in the category of a transaction or compromise, but, rather, each should be considered nothing more or less than a voluntary remission of debt. Plaintiff-appellant complains of the form of the releases but form matters not, as under the jurisprudence a remission of debt requires no special form. Mouton v. Noble, 1 La. Ann. 192; Succession of Piffet, 39 La.Ann. 556, 2 So. 210.
The voluntary remission of indebtedness is recognized by our law and it may be either conventional or tacit. LSA-C.C. art. 2199 provides as follows:
"The remission of the debt is either conventional, when it is expressly granted to the debtor by a creditor either having (creditor having) a capacity to alienate;
"Or tacit, when the creditor voluntarily surrenders to his debtor the original title under private signature which establishes the obligation."
When the parties to the accident proceeded to the office of the attorney who now is representing the defendant in this suit, they undoubtedly intended to mutually remit whatever claim for damages the one may have had against the other, and to that end they signed and executed under oath the release forms required by the Commissioner of Public Safety, and our opinion is that the forms which certify that each party had released the other from liability constitute full, effective and valid remissions of indebtedness such as are warranted by the above-quoted article of the Civil Code.
Although no consideration is expressed in the releases, there was valid consideration for the mutual remissions, as the release of liability from any obligation issued by one party to the other constituted a sufficient consideration to support mutual releases. Noto v. Blasco, La.App., 198 So. 429.
Counsel intimate that plaintiff-appellant was not serious in releasing defendant from liability, and even if it could be so said, we do not believe that the plaintiff would be entitled to recover any of his alleged damages in his accident with defendant's automobile. The law in its wisdom seeks to prevent a financially irresponsible driver from operating a motor vehicle so long as an unliquidated damage claim stands against him. The Commissioner of Public Safety is given full power to revoke or suspend the operator's license of an offending automobile driver unless such driver has filed proper security, or has been released from liability, or has been finally adjudicated not to be liable, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments with respect to claims for injuries or damages resulting from the accident. It cannot be doubted that these provisions were enacted in the interest of public safety and for the protection of the public at large against financial loss as a result of automobile accidents. If the parties were not serious in the matter of the releases and merely executed them to dupe and impose upon the Commissioner of Public Safety in order to forestall the revocation or suspension of their licenses to drive motor vehicles, they would be guilty of moral turpitude by perpetrating such deceit and fraud on the Department of Public Safety as would be inimical to the public safety and nullify the purposes for which the Safety Responsibility Law was enacted. If the parties can be said to have been guilty of such wrongdoing, it would *113 contravene the public policy of this state for the courts to lend judicial aid and comfort to either of them. In such circumstances the law will not concern itself with their differences, but would leave the parties in the position it finds them.
Therefore, the judgment appealed from is affirmed.
Affirmed.
REGAN, Judge (concurring).
I respectfully concur. I do not think that the law should have been taken upon the judicial anvil and hammered into an unexpected shape solely to reach the wrongdoer. Rules of law, badly applied, ultimately produce as their legitimate progeny bad exceptions ad infinitum.
It is my belief that the Court should have merely stated that under the facts (as enumerated in the majority opinion) the wrongdoer would simply be left in the toils of his own duplicity.