THE EMPLOYERS' FIRE INSURANCE COMPANY *vs.*
FRANCIS H. GARNEY & another.

Suffolk. February 4, 1965. — March 2, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Insurance,* Protection against uninsured motorists, Notice of claim, Proof
of claim. *Arbitration.*

Respecting an insurance policy wherein the insurer agreed to pay to the
insured the damages for bodily injury to him which he was legally
entitled to recover from the owner or operator of an uninsured auto-
mobile, including a hit and run automobile, G. L. c. 175, § 186B, made
§ 102 applicable not only to a "condition" in the policy calling for a
"written proof of claim, under oath if required," but also to a proviso
contained in the definition of a hit and run automobile, that the insured
within a certain time should have filed with the insurer "a statement
under oath" of a cause of action arising from an automobile accident
against one whose identity was unascertainable and of the facts sup-
porting the cause; and the insured was not barred from enforcing the
policy by his failure to file such "statement under oath" or the "written
proof of claim" under the "condition" after sustaining bodily injury in
an accident caused by a hit and run automobile where he promptly gave
the insurer an unsworn notice on a printed form of the particulars of
the accident and his injury and was never requested by the insurer to
furnish any further information or sworn claim.   [629–631]
Under an insurance policy whereby the insurer agreed to pay the insured
the damages for bodily injury to him which he was legally entitled to
recover from the owner or operator of an uninsured automobile, in-
cluding a hit and run automobile, "provided, . . . [that a] determina-
tion . . . whether the insured . . . [was] legally entitled to recover
such damages, and if so the amount thereof . . . [should] be made by
agreement . . . or . . . by arbitration," all facts bearing on the liability
of the insurer to pay a claim by the insured were to be determined by
agreement or by arbitration.   [631–632]

BILL IN EQUITY filed in the Superior Court on January 15,
1963.

The suit was heard and reported by *Taveira, J.*

*Philander S. Ratzkoff* for the plaintiff.

*Joseph F. Hodapp* for the defendants.

CUTTER, J.   The plaintiff (Employers') seeks declaratory

relief to determine whether a claim by Garney is within Coverage U set out in part II of the Massachusetts motor vehicle liability policy issued to Garney's father. The trial judge made findings and concluded that any damages sustained by Garney are covered by the policy. He ordered that an appropriate decree be entered and reported the case for the determination of this court. The facts are stated on the basis of the findings.

Part II, par. I, of the policy provided protection relating to injuries caused by "uninsured automobiles,"[1] which were defined (Part II, par. II [c] [2] and [d]) as including hit and run automobiles (see fn. 2). Garney claims to have sustained bodily injury as a result of an accident on April 9, 1962, on Route 1 in Norwood. Garney's father's vehicle, which Garney was driving, came in physical contact with another vehicle which failed to stop. Its operator remains unidentified. On April 17, 1962, Garney notified an agent of the company of the accident on a printed form, therein setting forth (a) the policy number, (b) the name of the agent, (c) the name and address of the insured, (d) the date, time, and place of the accident, (e) the serial and license numbers of the insured vehicle, (f) the name and address of the operator, (g) the nature of the injury and the name of the person injured, and (h) a brief description of the accident. This information was not sworn to, but was furnished on a printed form marked, "Form recommended by the Association of Casualty and Surety Companies." One Swanson, an "appraiser and adjuster of automobile losses for insurance companies," notified a company (Employers' Liability Assurance Corporation), which we assume, on the basis of the policy form, to be an af-

---

[1] Part II, par. I, reads in part, "To pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the . . . use of such uninsured automobile; provided, for the purposes of this coverage, *determination . . . whether the insured . . . is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured . . . and the company or, if they fail to agree, by arbitration*" (emphasis supplied).

filiated company of Employers', that the insurer (United States Fire Insurance Company) carrying collision insurance on the insured vehicle had paid "$320.60 net" for collision damages arising out of the accident. Employers' acknowledges that written notice of the accident was received. No sworn statement of claim[2] was filed. There was evidence that Employers' investigated the claim and that it never requested Garney to furnish a sworn statement of loss concerning the accident. Employers' apparently concedes that Garney "was an additional insured under this" policy.

1. The principal issue is whether Garney is barred from recovery under Coverage U because of his failure to file a sworn claim. Garney contends that under G. L. c. 175, § 102 (as amended through St. 1934, c. 110, § 1),[3] and § 186B (inserted by St. 1959, c. 168, § 1),[4] such filing is not necessary, inasmuch as he has given Employers' seasonable notice of the accident. Employers' takes the position that

---

[2] The definition of "[h]it-and-[r]un [a]utomobile" (Part II, par. II [d]) states that the term "means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying . . . provided: (1) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'; (2) the insured or someone on his behalf shall have reported the accident within 24 hours to a police . . . officer or to the [c]ommissioner of [m]otor [v]ehicles, *and shall have filed with the company within 30 days thereafter a statement under oath that the insured . . . has a cause . . . of action arising out of such accident . . . against a person . . . whose identity is unascertainable, and setting forth the facts in support thereof;* and (3) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying . . .'' (emphasis supplied). It appears from the accident report that the police were notified on April 9, 1962.

[3] Section 102, as so amended, reads in part, "The failure of the insured under a fire policy in the standard form . . . to render the sworn statement specified therein forthwith upon the occurrence of loss . . . shall not preclude recovery . . . if the insured, forthwith upon the occurrence thereof, gives written notice of the fire, and the location thereof, to the company and if the insured . . . upon receipt of any written request . . . made by the company forthwith after it receives such written notice, renders such sworn statement to the company. . . .''

[4] Section 186B made the provisions of c. 175, § 102 (fn. 3) "relative to certain rights of an insured who has failed to render *a sworn statement of loss* . . . apply in case of claims for loss or damage from any hazard insured against under any policy of insurance issued in the commonwealth" (emphasis supplied). See 1959 House Doc. No. 1121, 1959 House Bill No. 2510, and 1959 Senate Bill No. 535.

§ 186B applies only to relieve the insured from failure to comply with Condition 2, applicable to Coverage U,[5] requiring the filing of a "written proof of claim," and not from a failure to file the sworn statement called for in the definition of "hit-and-run automobile." See Part II, par. II (d) (2), quoted in fn. 2. Employers' suggests that the Legislature used the term "sworn statement of loss" in § 186B (fn. 4) to refer only to a somewhat formal, "conventional proof of loss condition," such as that usually required in respect of a fire loss, and not as referring to a notice of accident or claim required by any policy subject to § 186B.

Section 102 and § 186B, read together, show a more comprehensive purpose on the part of the Legislature than that suggested by Employers'. The general purposes of § 102 are, we think, (a) to provide that an insured under a fire insurance policy (who has seasonably notified his insurer that there has been a loss) shall not lose his rights to recover for a loss because of any failure to comply with policy requirements for filing any proof of claim, and (b) to shift to an insurer, which has received reasonable notice that a loss has occurred, the burden of notifying the insured if, and to what extent and in what form, further information about the loss is desired. Section 102 thus indicates to us a legislative desire that a lay insured's failure to comply with policy requirements in fine print in respect of filing insurance statements and proofs of claim shall not defeat his claim to the insurance protection for which the insurer has been paid, provided, of course, that the insurer has been given fair notice that there has been a loss which the insured asserts to be within that protection. The lan-

---

[5] Condition 2 provided in part under the heading "Proof of Claim; Medical Reports," as follows, "As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable . . . . The insured and every other person making claim hereunder shall submit to examinations under oath . . . and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim."

guage of § 102 should not be narrowly interpreted. See *Goodman* v. *Quaker City Fire & Marine Ins. Co.* 241 F. 2d 432, 436 (1st Cir.). Section 186B, in respect of other than fire policies, we view as having been enacted with a similarly broad purpose. The sworn statement called for by the "hit-and-run" definition of Coverage U and the "written proof of claim" called for in Condition 2 of Coverage U, if made under oath, are both "sworn statement[s] of loss" and are within that term as used in § 186B (fn. 4). Employers' received prompt, full, and fair notice of the loss on an approved insurance form. If it needed more information about the accident, or if it desired that the information be furnished under oath, it had the burden under § 186B of making a request to that effect, and of telling Garney in what form to submit his statement.

We reject Employers' contention that § 186B relates only "to forms of property insurance constituting indemnity for a loss." Section 186B makes § 102 "apply in case of claims for loss or damage from *any hazard* insured against under *any policy* . . . issued in the commonwealth" (emphasis supplied). The language is apt to include the hazard of becoming involved in an accident caused to an insured by a motorist who cannot be identified or who is uninsured. Cf. *Matthews* v. *Allstate Ins. Co.* 194 F. Supp. 459, 464–465 (E. D. Va.). We think Coverage U may reasonably be viewed as insuring against such a hazard and that § 186B applies to such insurance.

2. It remains for us to determine to what extent a claim under Coverage U must be submitted to arbitration under Part II, par. I, of the policy. See the italicized language in fn. 1. See also G. L. c. 175, § 111D, inserted by St. 1959, c. 438, § 2. It was not necessary to decide this question in *Fazio* v. *Employers' Liab. Assur. Corp. Ltd.* 347 Mass. 254, 255, for the parties were there "in accord that coverage questions are not a subject for arbitration under" c. 438. The New York Court of Appeals, by a four to three decision, has taken the view that whether the motorist who caused the accident was insured was not a matter for arbi-

tration. *Matter of Arbitration between Rosenbaum and American Sur. Co.* 11 N. Y. 2d 310, 314. Now that we are directly confronted with a closely similar question, we are persuaded that the three dissenting judges expressed the more logical and practical view, when they opposed (p. 316) reading into the agreement to arbitrate in Coverage U, Part II, par. I, "a provision for piecemeal treatment of a specified area of dispute by two separate and distinct procedures." We assume that the general scope and meaning of the policy provisions may be matters not exclusively to be dealt with by arbitration. Whether, however, a particular situation of fact comes within the policy provisions (at least when their meaning has been determined) seems to us a matter which by Coverage U may be submitted to arbitration. Examples of such matters are whether the other motorist was or could be identified, whether he was insured, whether his acts or omissions caused the accident, whether he was negligent, and whether the insured was guilty of contributory negligence. Were we to decide otherwise, we would be adding, as the three dissenting judges in the *Rosenbaum* case pointed out (p. 316), "a new type of cause to an already overburdened court calendar with its attendant delay . . . and financial burden, which could be expeditiously . . . disposed of in the manner upon which the parties have agreed."

3. A final decree is to be entered declaring (a) that Garney, in the circumstances, is not precluded from enforcing Coverage U by his failure within thirty days of the accident to file a sworn statement under Part II, par. II (d) (2), of the policy or to file as soon as practicable a written proof of claim under Condition 2; and (b) that, unless the parties agree to dispense with arbitration, the liability of Employers' to indemnify Garney is to be determined by arbitration in accordance with Part II, par. I, of the policy. Garney is to have costs of the proceedings upon the present report.

*So ordered.*