Adele S. DUGGAN
and
Adele S. DUGGAN, As Administratrix of the Estate of Francis A. Duggan, Deceased,

v.

The TRAVELERS INDEMNITY COMPANY.

Civ. A. No. 65-463-G.

United States District Court
D. Massachusetts.

March 31, 1967.

Mack M. Roberts, Brookline, Mass., Manuel Sherman, Boston, Mass., for plaintiffs.

Paul R. Frederick, John F. Drum, Badger, Parrish, Sullivan & Frederick, Boston, Mass., for defendant.

## OPINION

GARRITY, District Judge.

The plaintiff in this case is suing in her own behalf and as administratrix of the estate of her late husband, Francis A. Duggan, to recover upon a liability insurance policy issued by the defendant, The Travelers Indemnity Company ("Travelers"). Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332 (a). The complaint alleges that on February 18, 1959 the defendant had two policies in force with Adele Duggan and Francis A. Duggan, liability insurance policy No. HPS 5686266 in the amount of $10,000 and comprehensive personal liability insurance policy No. CP 7786628 in the amount of $20,000, in which the defendant agreed to pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages because of bodily injury, sickness or disease sustained by any person; that on February 18, 1959 a dog owned and controlled by the Duggans bit one Maud S. Koller causing bodily injuries to her; that as a result Koller brought suit against the Duggans, which was defended by the defendant's attorneys and in which Koller recovered a judgment of $30,685; that the defendant paid only $10,000 in partial satisfaction of the judgment and has refused to pay any further sums. In its answer the defendant denied that there was any policy of insurance in effect on February 18, 1959 other than the one for $10,000. Further answering, the defendant stated that any policy for $20,000 was procured by fraud in that it was procured after the loss occurred and no notice of a claim under any policy other than the one for $10,000 was received prior to entry of final judgment in the suit by Koller against the Duggans.

The case was tried without a jury and the court finds the following facts:

1. In February, 1959 Adele S. Duggan was the sole trustee of a trust which owned the building at 139 Charles Street, Boston, Massachusetts, where Mrs. Duggan owned and operated the Adele Coiffeur Salon, a beauty parlor. On June 21, 1956, the Duggans procured the $10,000 policy from Travelers to cover the premises at 139 Charles Street and other properties. On February 17, 1959 (at what time of day does not appear), Francis Duggan telephoned John Quincy, an insurance agent, and requested an adjustment in his insurance to eliminate certain coverage and to put on a $20,000 comprehensive liability policy at the same time. Quincy immediately telephoned Obrion, Russell & Co., general insurance agents for Travelers, and asked them to make the adjustments requested by Francis Duggan. On the following day, Quincy's secretary wrote a confirmatory letter to Obrion, Russell & Co. which requested that the adjustments be made effective as of February 17.

2. On February 18,[1] Mrs. Duggan finished cutting Mrs. Koller's hair in the Adele Coiffeur Salon while Bonnie-Blue-Sean O'Casey, a Kerry Blue terrier owned by the Duggans, slept on the floor nearby. Mrs. Koller walked over to the

---

1. Whether these events occurred on February 18 or on February 17 was contested at the trial. On March 23, 1959 Mrs. Duggan signed a four-page statement prepared by an investigator for Travelers which fixed the date of the accident as February 17 and the time at about 5 P.M. However, the same statement, Exhibit F, refers to a police investigation, Mrs. Koller's admission to a hospital, the taking of the dog to the Animal Rescue League and other events all on the evening of the day of the accident which could readily have been demonstrated by the defendant to have occurred on February 17 had they happened on that day. From the defendant's failure to produce any of this readily available evidence, I infer that the accident occurred on February 18. The plaintiff testified that her statement of March 23 was in error and that the accident happened on February 18, but I attach less importance to her testimony because her memory generally was extremely poor.

dog and patted it and the dog, startled, jumped up and bit her on the lip. The dog was not usually in the beauty parlor but had been left there by Mr. Duggan while he brought some shopping bundles to the Duggan's home. Shortly thereafter the Duggans notified John Quincy of the incident and claimed coverage under the $10,000 policy which Travelers had issued in 1956; they did not then claim coverage under any other insurance policy. Mr. Joseph Dolan, an employee of Quincy, called Obrion, Russell & Co. on March 13 and asked them to notify Travelers of the Duggans' claim under the $10,000 policy.

3. Koller sued the Duggans in December, 1959 in the Suffolk County Superior Court claiming damages of $50,-000. On January 12, 1960 Travelers wrote a letter to the Duggans stating that it had designated an attorney to protect their interests under the $10,000 policy, that the policy afforded protection only up to $10,000 and that the Duggans might want to have their own attorney present to protect their interests over and above the policy limits. The case was referred to an auditor who found for Koller in the amount of $25,000. The auditor's report was confirmed and on July 10, 1963 an execution issued against the Duggans in the amount of $30,685, including interests and costs. Travelers paid $10,000 toward its satisfaction and the Duggans paid the balance. Francis A. Duggan died on May 4, 1964.

4. At no time prior to July 10, 1963, when the execution issued, did the Duggans notify Travelers that they sought protection under the $20,000 policy. Mrs. Duggan did not learn of the existence of that policy from her husband but from Manuel Sherman, Esquire, an attorney from whom she sought advice concerning the satisfaction of the execution. Mr. Sherman discovered the $20,000 policy in the course of examining the Duggans' personal papers and brought it to Mrs. Duggan's attention.[2] It contained the following provision as to notice:

"1. Notice of Occurrence. When an occurrence takes place written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses."

This provision as to notice was substantially the same as, though not identical with, that contained in the other policy. The $20,000 policy did not apply "to any business pursuits of an insured", an exclusion not provided for in the other policy.

### Conclusions of Law

The controlling principles of law are well settled. The failure of an insured to comply with a requirement of notice of claim in an insurance contract prevents recovery against the insurer, in the absence of showing of excuse or waiver. Baker v. Hartford Acc. & Indem. Co., 1963, 346 Mass. 774, 194 N.E.2d 635, Peters v. Saulinier, 1967, Mass.Adv.Sh. 131, 222 N.E.2d 871. Notice of an occurrence is necessary to give the insurer an opportunity to investigate the circumstances surrounding a possible claim and the absence of proper notice may prejudice the insurer. Fisher's Case, 1963, 346 Mass. 770, 193 N.E.2d 693. To give notice "as soon as practicable" means within a reasonable time. Segal v. Aetna Casualty and Surety Co., 1958, 337 Mass. 185, 148 N.E.2d 659. Notice does not always have to be in the particular mode specified in the policy. Employers' Fire

2. There was no evidence as to the date of the meeting with Attorney Sherman, although it must have been before December 2, 1963 when the Duggans brought suit in the Suffolk County Superior Court alleging the same cause of action as was stated in the complaint filed in this court on July 9, 1965. Nor was there evidence when after July 10, 1963 a claim on the $20,000 policy was made against Travelers.

Ins. Co. v. Garney, 1965, 348 Mass. 627, 205 N.E.2d 8.

The crux of this litigation is whether the admittedly timely notice by the Duggans to the defendant under the $10,000 policy satisfied the notice requirement of the $20,000 policy which insured the same risk. The plaintiff contends that the purpose of the notice requirement of the $20,000 policy, of enabling the insurer to investigate promptly, was satisfied by the notice given under the other policy because the defendant did investigate promptly and has not been prejudiced by the notice's omission of specific reference to the $20,000 policy of which a copy was undoubtedly kept in the defendant's files. An initial difficulty with the plaintiff's position is that, so far as shown by the evidence, the defendant never associated the claim under the $10,000 policy with the existence of the larger one. On the contrary, the defendant's letter of January 12, 1960 inviting the Duggans to take steps on their own to protect their interests above the $10,000 policy limit indicates that the defendant acted on the assumption that only the $10,000 policy covered the dogbite incident. The basic fallacy of the plaintiff's contention is its oversimplification of the function of notice which serves not only to alert the insurer to the need for an investigation but also to remind it of its maximum exposure to liability so that it may act accordingly. It is common sense that an insurer with a potential liability of $30,000 might act differently in defending against a $50,000 claim for serious personal injuries than it would if its exposure were limited to $10,000. Among other things, it might engage the services of different or additional investigators, expert witnesses and trial counsel or settle the claim advantageously by offering in settlement a sum higher than would be offered if maximum exposure were $10,000.

The probability of prejudice becomes all the greater when, as here, different policies are involved. Legal and factual defenses to liability may pertain to one policy but not to another. For example, in the Superior Court suit defended by the defendant in this case, the precise time and date of the dog-bite was immaterial because the $10,000 policy which admittedly covered the accident had been in force for over two years. At the trial in this court, chronology was highly material to the defendant's contention that the accident occurred prior to the issuance of the $20,000 policy.

The plaintiff has made no showing that the defendant waived its defense of lack of notice on the $20,000 policy nor that failure to give notice specifically relating to that policy should be excused for any reason. The plaintiff has not attempted to explain why the late Mr. Duggan failed to tell his wife about having taken out a new $20,000 liability policy on the very day before the dog-bite incident. It is inconceivable that the coincidence never dawned upon him.

■ I conclude that although the accident on February 18, 1959 was an occurrence within the coverage of the $20,000 policy,[3] the Duggans did not give timely notice of it to the defendant under that policy and their failure to do so was a material breach of a condition of the defendant's liability under that policy which was prejudicial to and not waived by the defendant.

Judgment for the defendant.

3. The defendant's contention that the accident arose from a business pursuit of the insured and therefore was excluded from coverage has not been overlooked.