482 P.2d 484

**STATE FARM FIRE AND CASUALTY COMPANY, Appellant and Cross-Appellee,**

v.

**Frank G. ROSSINI and Bertha Rossini, husband and wife, Appellees and Cross-Appellants.**

**No. 2 CA–CIV 889.**

Court of Appeals of Arizona, Division 2.

March 18, 1971.

Rehearing Denied April 9, 1971.

Review Granted May 11, 1971.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellant and cross-appellee.

Somers & Arnold, by Jack T. Arnold, Tucson, for appellees and cross-appellants.

HOWARD, Judge.

Mr. and Mrs. Rossini, plaintiffs in the trial court, filed a complaint naming State Farm and one Darlene Dixon, as defendants. Two claims were asserted: (1) Against Dixon for damages incurred as the result of her alleged negligence in operating a motor vehicle which resulted in injury to the plaintiff-husband, and (2) Against State Farm for breach of contract, i. e., refusal to pay coverage benefits of a policy issued by it to the plaintiff-husband. State Farm filed a responsive pleading to Count Two, alleging inter alia that the plaintiff had executed fair and binding releases which barred their claim against State Farm.[1]

Pursuant to stipulation of counsel, Count Two of the complaint with respect to coverage was tried to the court, sitting without a jury, prior to trial on Count One. The pretrial order designates several issues to be tried, including whether the plaintiff had uninsured motorist coverage under the State Farm policy and if so, whether State Farm was entitled to have the issues of liability and the amount of damages arbitrated pursuant to the terms of the policy. The trial court ruled that there was uninsured motorist coverage and that the plaintiffs' claim pursuant thereto was subject to arbitration. Both parties have appealed from the judgment, State Farm as to the coverage determination and plaintiff as to the ruling with respect to arbitration

and also that the limit of plaintiffs' recovery was $10,000.[2]

The facts are as follows: The plaintiff-husband was a passenger in a vehicle operated by his son when it was involved in a collision with a vehicle operated by Darlene Dixon. Neither the son nor Miss Dixon had liability insurance. Plaintiff was the named insured under a valid automobile liability insurance policy with State Farm which included uninsured motorist coverage.

After the accident, the son's driving privileges were revoked because of his failure to carry liability coverage. In need of his license for purposes of employment, he obtained release forms from the Motor Vehicle Division, and exchanged releases with Miss Dixon, giving her one signed by himself and another signed by his father. His driving privileges were subsequently restored after he procured liability insurance.

State Farm denied coverage on the grounds that the plaintiff had violated the policy provisions by signing a release of an uninsured tort-feasor without first obtaining written approval of the insurer. The exclusions provision of the subject insurance policy provides:

"This insurance does not apply under:

\*　　\*　　\*　　\*　　\*　　\*

(n) coverage U to bodily injury to an insured or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative of any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor; \* \* \*"

One of the policy conditions is that in the event of payment to any person under the uninsured motorist coverage, the com-

---

1. Dixon filed a separate answer to both counts, which included a denial of negligence and affirmatively plead inter alia, the execution of releases which exonerated her from liability for claims arising out of the accident.

2. The judgment appealed from had requisite finality for appeal purposes since the rule 53(b), 16 A.R.S., as amended, requirement of an "express determination and direction" was complied with.

pany would be entitled, to the extent of such payments, to the proceeds of any settlement or judgment that might result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which the payment had been made.

At trial, a release signed by plaintiff was admitted into evidence. The pertinent part of the release is as follows:

" ARIZONA HIGHWAY DEPARTMENT
MOTOR VEHICLE DIVISION

RELEASE OF LIABILITY

TO: MOTOR VEHICLE DIVISION    F.R. Case No.
    Financial Responsibility    8117060
    Service    11207060
    2324 N. 20th Ave.    Accident
    Phoenix, Arizona 85009    Date

(I) (We) the undersigned, for good and valuable consideration, do hereby release

DARLENE EVAN DIXON
(Name of Party being released)

2309 North Ralph
(Complete Address)

of and from any and all claims and liability for/or on account of a motor vehicle accident occurring on or about the 11 day of August 1967 in which the undersigned were involved

FRANK G. ROSSINI SR.
(Signature of party giving release)

933 W. Drexel Rd.
(Address) "

The plaintiff, when questioned about the execution of this release, testified:

"Q. After the accident occurred did your son ask you to sign a piece of paper for him so he could get his driver's license?

A. Yes.

Q. Do you remember when that took place, how long after the accident, do you remember, how long after the accident it was?

A. About a month, I guess. He just took the paper out to the house and told me to sign here. I didn't read the paper. I didn't know what I was writing.

Q. Let me get you to look at what is marked State's Exhibit A which purports to be a Xerox copy. Is that your signature?

A. That is my signature right there but I didn't read the paper.

Q. Is this the piece of paper your son asked you to sign?

A. Right.

Q. You can read it, right?

A. Right.

Q. You didn't read it because your son just told you, 'Please sign this, Dad. I need this to get my driver's license.'?

A. That is all. That is all.

Q. Did you receive any money or anything like that because of your signing this release?

A. No, sir, I didn't.

Q. Miss Dixon, the girl that was driving the other car, did she ever bring any paper around and ask you to sign it at all?

A. No, sir.

Q. Did you have anything to do with giving the release or did your son do that to get this piece of paper; did you go down and get it?

A. No. He just took it to my house. He took it to my house and just told me to sign here because he wanted his driver's license.

\* \* \* \* \* \*

Q. Other than your name which you have indicated is your signature, the address 933 W. Drexel Road, that is your home address?

A. Yes.

Q. Is that in your writing also?

A. That's right."

Although the document appeared to be notarized, the plaintiff denied he had signed it before a notary public. Plaintiff also testified that he signed the document because his son asked him to so that he could get his driving privileges restored to him and that, although he didn't read it, he intended him to use it for just that purpose.

When questioned about his dealings with Miss Dixon, plaintiff testified that she and her father had come to his home and asked him to sign a release but he did not do so. Also he denied ever discussing the document bearing his signature with Miss Dixon or having made any bargain or agreement with her.

The son testified that he had asked his father to sign the release because "I wanted to get my license and needed more money since I was in financial trouble." He also testified that after his father had signed the release, he took it to a notary public and obtained the requisite notarization. He identified his father's signature on the release and stated that the name "Darlene Evan Dixon" was inserted on the release form when he had it notarized.

The purpose of a provision excluding liability of the insurer under the policy where the insured makes a settlement with the person liable for his injuries without the consent of the insurer, has been stated by a number of courts to be for protection of the insurer's subrogation rights against the uninsured motorist and assurance that no judgment or settlement will be obtained in which the rights of the insurer are inadequately protected. Volkswagen Insurance Company v. Taylor, 201 So.2d 624 (Fla.App.1967); Mills v. Farmers Insurance Exchange, 231 Cal.App.2d 124, 41 Cal. Rptr. 650 (1964); Allstate Insurance Company v. Charneski, 16 Wis.2d 325, 114 N.W.2d 489 (1962). No question has been raised with respect to the validity of this provision.[3] It has been held that a release, for purposes of allowing the uninsured motorist to meet the requirements of the Financial Responsibility Law constitutes a "settlement" and operates to absolve an insurer of liability under the uninsured motorist coverage, notwithstanding the motives prompting execution of the release. American Fidelity Fire Insurance Company v. Richardson, 189 So.2d 486 (Fla.App.1966);

Coles v. Johns, 377 S.W.2d 587 (Ky.App. 1964); Haley v. Badon, 98 So.2d 109 (La. App.1957).

Mr. Rossini was able to read and when he signed the release without reading it, he was charged with the knowledge of its contents. He was precluded from attacking it on the grounds that he did not know its import, since the failure to read the release was not due to some artifice or fraud of, nor was chargeable to, the party released. Cowart v. Honeycutt, 257 N.C. 136, 125 S.E.2d 382 (1962); Corbett v. Bonney, 202 Va. 933, 121 S.E.2d 476 (1961); Morris v. Millers Mutual Fire Insurance Company of Texas, 343 S.W.2d 269 (Tex.Civ.App.1964); 76 C.J.S. Release § 25(b).

Consequently, when State Farm introduced into evidence the release, admittedly executed by Mr. Rossini, it sustained its burden of proving a policy defense. Mr. Rossini's position, however, was that the release was invalid for lack of consideration. Since he was seeking to avoid the operation of the release, his was the burden of proving its invalidity. Wagoner v. Mountain Savings and Loan Assoc., 311 F.2d 403 (10th Cir. 1962); Dawes v. Elliston, 369 S.W.2d 285 (Mo. App.1963); Hudson v. Thies, 35 Ill.App.2d 189, 182 N.E.2d 760 (1962).

The trial court, in deciding the question of coverage in favor of the plaintiffs, apparently found that the release was not binding. A release must be supported by consideration. Sloan v. Burrows, 258 N.E.2d 303 (Mass.1970); Lilenquist Motors, Inc. v. Monk, 64 Wash.2d 187, 390 P.2d 1007 (1964); Maine v. Clack, 43 Ariz. 492, 33 P.2d 283 (1934); 76 C.J.S. Release § 10. If not supported by consideration, it is not binding. Southwestern Fire and Casualty Co. v. Atkins, 346 S.W.2d 892 (Tex. Civ.App.1961); Lilenquist Motors Inc., supra. Although a benefit to a third person

3. Nor is any problem presented as to the effect of State Farm's withholding of consent so as to constitute a waiver of this provision. E. g. Kisling v. M. F. A. Mutual Insurance Company, 399 S.W.2d 245 (Mo.App.1966); Oren v. General Accident Fire & Life Assurance Co., 175 So.2d 581 (Fla.App.1965).

may be sufficient consideration, the benefit must be the inducement for the promise. Kam Chin Chun Ming v. Kam Hee Ho, 45 Haw. 521, 371 P.2d 379 (1962); Restatement, Contracts § 75; 1 Williston on Contracts, 3rd Ed. § 113; 17 C.J.S. Contracts § 89.

The only evidence presented to the trial court, which apparently was believed, was that no benefit was conferred upon Mr. Rossini or another at his request nor was a legal detriment to Miss Dixon bargained for by him. Such being the case, we find no error as to the coverage determination.

State Farm argues, however, that to permit Mr. Rossini to avoid the release admittedly signed by him, to enable his son to get his driver's license, would be in contravention of the Financial Responsibility Law. In the case of Haley v. Badon, supra, the Louisiana appellate court indicated that if, as intimated by counsel, the mutual releases were executed solely to forestall the revocation or suspension of the parties' licenses, such conduct would be inimical to the public safety and nullify the purposes for which the Safety Responsibility Law was enacted. The court stated:

"If the parties can be said to have been guilty of such wrongdoing, it would contravene the public policy of this state for the courts to lend judicial aid and comfort to either of them. In such circumstances, the law will not concern itself with their differences, but would leave the parties in the position it finds them." 98 So.2d at 112–113.

We agree with State Farm that the principal purpose of the Financial Responsibility Law is protection of the public using highways from financial hardship which might result from the use of automobiles by financially irresponsible drivers. Transportation Ins. Co. v. Wade, 106 Ariz. 269, 475 P.2d 253 (1970); Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963). However, we find nothing in the record of the case at bench which indicates that Mr. Rossini executed the release without any intention to release his son and merely to perpetrate a fraud on the Motor Vehicle Department. The facts presented here are in marked contrast to those in Haley v. Badon, supra.

In *Haley*, neither the plaintiff nor the defendant carried liability insurance and, in order to prevent suspension of their driving privileges, agreed to file certificates to the effect that they had released each other from all liability for damages. The releases were executed and filed. Subsequently, the plaintiff filed suit for damages, the defendant asserted the release as a defense, and the action was dismissed. The plaintiff contended that his release did not actually amount to a compromise of his differences with the defendant but was merely for the purpose of leading the Department of Public Safety into believing he had released the defendant from liability. The Louisiana appeals court sustained the validity of the mutual releases and declined to hearken to the plaintiff's claim that he was "not serious" about releasing the defendant from liability.

We cannot classify Mr. Rossini's conduct with that of the plaintiff in *Haley* and say, as State Farm would have us do, that he intended to contravene the Financial Responsibility Law. The evidence reveals only that he signed a paper for his son so he could get his driver's license. We decline to denounce Mr. Rossini's conduct as constituting such fraud and deceit as to bar judicial relief. If there was any duplicity, a matter we do not pass upon, it was not his.

Plaintiffs challenge the trial court's ruling that State Farm was entitled to set off sums paid out under the medical payments coverage, thereby limiting plaintiffs' total recovery to no more than $10,000. State Farm concedes, and we agree, that the recent decision of Bacchus v. Farmers Ins. Group, 106 Ariz. 280, 475 P.2d 264 (1970) is dispositive of this issue, requiring reversal of the judgment as to the setoff allowances.

Plaintiffs' other contention is that the policy provision requiring submission of the uninsured motorist claim to arbitration cannot be invoked by State Farm since it denied coverage. We do not agree.

The arbitration provision of the policy provides, in pertinent part:

"10. Arbitration. If any person making claim under coverage U and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator."

At the outset we feel constrained to comment on the lack of uniformity in decisions construing this provision, i. e., as to the arbitrability of a particular issue involving an uninsured motorist endorsement.[4] Some courts take the view that *all* issues arising under the uninsured motorist coverage are to be submitted to arbitration. See Anno. 29 A.L.R.3d 331 § 3. Others hold that only the issues of the liability of the other motorist and the amount of damages resulting therefrom are subject to arbitration while issues relating to coverage under the policy are for judicial determination. Ibid. § 5 et seq.

In the cases of Volkswagen Ins. Co. v. Taylor, supra, and Visselli v. American Fidelity Co., 155 Conn. 622, 237 A.2d 561 (1967), it was recognized that the defense of violating a clause prohibiting settlement without the insurer's consent is not an arbitrable issue.

We believe that the latter view, i. e., that coverage issues are not within the scope of the arbitration provision, is more sound. Parties to an arbitration agreement are only bound to arbitrate issues which by the clear language of their agreement, they have agreed to arbitrate. Western Casualty & Surety Co. v. Strange, 3 Mich. App. 733, 143 N.W.2d 572 (1966). We can-

not extend the scope of the arbitration agreement beyond the fair import of its terms. Nor are we impressed by the argument that courts will be clogged with "piecemeal" litigation. See Employers' Fire Ins. Co. v. Garney, 348 Mass. 627, 205 N.E.2d 8 (1965).

Under the subject provision, it is not the right to recover damages from State Farm which is made arbitrable but the right to recover damages from the uninsured motorist, Miss Dixon. The words "Matter or matters upon which such person and the company do not agree" in the arbitration provision clearly refer to the two issues previously mentioned, namely, the right to recover damages from the owner or operator of an uninsured automobile and the amount of such damages.

State Farm's liability to the plaintiffs is dependent upon coverage under the policy, as well as on the plaintiffs' legal right to damages from an uninsured motorist. Whether or not the exclusion provision of the policy is applicable is clearly a coverage issue and therefore not within the purview of the arbitration provision of the policy. The trial court's ruling with respect to arbitration was therefore correct.

The judgment is modified to provide that the plaintiffs are entitled to recover up to the limits of the uninsured motorist coverage and in all other respects the judgment is affirmed.

HATHAWAY, J., concurs.

McGUIRE, Judge, (specially concurring).

I am unable to concur in all the legal reasoning in the majority opinion but do concur in the result. From the pretrial order and the transcript of testimony it clearly appears that the validity of the release as to the defendant insurance company was put in issue and tried. Specific findings of fact were not requested nor were they made and there is a presump-

4. See Widiss, Uninsured Motorist Coverage, § 6.17.

tion that the trial judge found every fact necessary to support the judgment insofar as this can reasonably be inferred from the evidence. As mentioned in the majority opinion it appeared that plaintiff had refused to sign a release when requested by Dixon and signed the document without knowing what it was, and that the document was presented to him by his son who had not even filled in Dixon's name when his father signed it. To this is added the fact that it was greatly to the advantage of both Dixon and the son to get the father's signature and greatly to his disadvantage to give it. Without unusual circumstances of this or similar nature I would not sustain the judgment.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.