ELLIS, Judge.
This suit, together with a consolidated suit involving the identical parties, La.App., 183 So.2d 670, was brought by American Metal Window Company, Inc., against St. Tammany Parish School Board, Reine Construction Corporation, Trinity Universal Insurance Company and Crescent Steel Erectors, Inc. (now Crescent Steel Company, Inc.), hereinafter designated American, St. Tammany, Reine, Trinity, and Crescent, respectively.
The object of the two suits is to collect the price of certain metal windows sold by American to Crescent under two separate subcontracts, both dated June 26, 1961. The *668 windows were installed' by Crescent, a subcontractor of Reine, in two separate public schools in St. Tammany Parish. Reine was the prime contractor and Trinity bonded both of these school jobs. The amount claimed in this suit involving the Folsom Consolidated School job is $740.00.
On May 10, 1961, Crescent granted American a contract for four hundred twenty-eight window units for use in the public grain elevator job in New Orleans at a contract price of $12,650.00. The prime contractor on that job was the Ross Corporation, hereinafter referred to as Ross. A supplemental subcontract dated August 30, 1961, concerning the public grain elevator job added $3150.00 to the initial contract with American for a total of $15,800.00. Two other small charges and the sales tax brought the total claimed by American on the grain elevator job to $16,378.03.
St. Tammany prays for judgment against all other defendants in the event it is cast in judgment and, in that circumstance, Reine and Trinity pray for judgment against Crescent.
Crescent defends this action on the ground that American, on February 20, 1962, granted a release to Crescent and Ross in the following terms:
“KNOW ALL MEN BY THESE PRESENTS:
“THAT the American Metal Window Company, Inc., a Corporation domiciled at 456 W. 61 Street, Shreveport, Louisiana, herein represented by Mr. Forrest T. Nettles, duly authorized, in consideration of the sum of Fifteen Thousand Seven Hundred Seventy Four Dollars and Fifty Cents ($15,-774.50), the receipt whereof is hereby acknowledged, does hereby release and forever discharge Crescent Steel Erectors, Inc. and The Ross Corporation, their successors and assigns, from all and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants., contracts, agreements, judgments, claims and demands whatsoever in law or equity, including such as have arisen by reason of or in any manner have grown out of the said American Metal Window Company, Inc. having furnished supplies and materials to the said Crescent Steel Erectors, Inc. for use on the Grain Elevator Project of The Ross Corporation.
“In witness whereof, the said Forrest T. Nettles hereto affixes his signature at New Orleans, Louisiana, this twentieth day of February 1962.
s/ Forrest T. Nettles”
The trial court, relying on 76 C.J.S. Release § 38, p. 669 dismissed American’s suit with the following statement:
“The specific terms of the release appear to cover all debts or obligations which might have existed as of the time that the release was executed. If it was intended that the release be limited only to the grain elevator project, then the release should * * * have so stated.”
While it is impossible to disagree with the lower court’s conclusion that the language of the release is all inclusive and covers more than claims arising out of the grain elevator job, we are convinced that it was not the intention of the parties to the release to adjust and compromise the St. Tammany school jobs, but only the grain elevator job.
Mr. Nettles, who at the time of the trial was no longer employed by American and out of the State, testified by deposition on a motion for new trial that it was never his intention to release American’s rights on the school jobs as a consideration for settling the grain elevator account.
This is supported by a copy of a letter dated February 20, 1962, written by American to Mr. F. J. Cuquet, Executive Vice *669 President of The Ross Corporation. The letter is as follows:
“Re: Grain Elevator Job
New Orleans, Louisiana
“Dear Mr. Cuquet:
“This is to advise you that we will hold no further claim against The Ross Corporation or Crescent Steel Erectors on the subject job upon the receipt of your check for $15,774.50, and its payment by your bank.
“Thank you very much for your cooperative attitude.
Yours very truly,
Forrest T. Nettles”
It is Mr. Nettles’ testimony that this was the letter he prepared as a release, but that upon arriving at Mr. Cuquet’s office to receive payment, he was asked to sign the other release, which he did, not realizing the difference in the two.
The $15,774.50 was actually paid by Ross for Crescent, its contractor, the latter being in serious financial difficulty at that time. This being the case, we cannot accept Crescent’s argument that Ross intended to pay Crescent’s accounts on jobs where Ross was not in any way involved. Ross would have had no reason to do so.
Nor can we accept the testimony of Mr. Delahoussaye that, as president of Crescent, it was his understanding that American was giving up its rights on the school jobs in order to get the contract on the grain elevator job. His testimony on this point was as follows:
“Q. Did you ever discuss the, with Mr. Nettles the question of payment of these windows that went into the schools ?
A. Yes, sir, I discussed payment. I paid him for one school, the Sixth Ward, and we discussed payment. I told him we had collected some money and we used it to keep in operation and he said he was sure if he got the grain elevator contract to get his foot in the door in this area, it would be alright and we could pay our invoices when we collected off the grain elevator. That was Mr. Nettle.”
It is clear from Mr. Delahoussaye’s own testimony that the best Mr. Nettles ever promised was to forego collecting on the school job until after the grain elevator account was settled. This is not denied by American, who freely admits that when they learned of Crescent’s financial troubles they concentrated on the grain elevator job because of its size and because the school jobs were public bonded contracts. In view of the fact that the grain elevator contract was entered into more than a month before the school contracts, we must reject Mr. Delahoussaye’s testimony that American intended to forgive the school debt as consideration for being named in the grain elevator j ob.
Defendants rely on several cases which support the conclusion arrived at by the lower court. However, these are all from other jurisdictions and are contrary to the law of Louisiana.
Our law on the subject is set forth in Louisiana Civil Code Article 3073 and is to be found in Moak v. American Automobile Insurance Company, 242 La. 160, 134 So.2d 911, and Wise v. Prescott, 244 La. 157, 151 So.2d 356.
Evidence is always admissible to show the circumstances under which the release was executed and the true intention of the parties thereto. That law and the facts in this case convince us that the decision of the lower court should be reversed, and judgment rendered in favor of American Metal Window Company, Inc. and against St. Tammany Parish School Board, Reine Construction Corporation, Trinity Universal Insurance Company, and Crescent Steel Company, Inc., in solido, in the amount of $740.00, together with legal *670 interest from judicial demand, July 13, 1962, and for all costs.
Judgment is further rendered in favor of St. Tammany Parish School Board against all other defendants for an equal amount.
Judgment is also rendered in favor of Reine Construction Corporation and Trinity Universal Insurance Company against Crescent Steel Company, Inc., for an equal amount.
Reversed.