225 So.2d 102 (1969)
Michael L. HYATT, Plaintiff-Appellee,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Defendants-Appellants.
No. 2692.
Court of Appeal of Louisiana, Third Circuit.
June 12, 1969.
Rehearings Denied August 7, 1969.
*103 Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellant-appellee.
Wood & Jackson, by W. R. Jackson, Jr., Leesville, for plaintiff-appellee.
Thomas A. Self, Many, for defendant-appellee-appellant.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Plaintiff, Michael L. Hyatt, instituted this action for damages for personal injuries sustained by him as the result of a motor vehicle collision. The defendants are Mr. and Mrs. Jewell D. McNeely and Hartford Accident and Indemnity Company. Judgment was rendered by the trial court in favor of plaintiff, and defendants have appealed.
Plaintiff has timely filed in this court:
(1) A motion to dismiss the appeal which was taken by Mr. and Mrs. McNeely; and (2) an "Alternative Answer to Appeal," in which he prays that the amount of the award be increased.
We will consider first the motion to dismiss the appeal.

Motion to Dismiss Appeal
The judgment appealed from was signed on October 11, 1968. Pursuant to an oral motion made in open court, a devolutive appeal was granted to Mr. and Mrs. McNeely on October 25, 1968. The appeal bond was fixed at $1000.00, and the appeal was made returnable on December 24, 1968. The return date was later extended *104 to February 24, 1969. On December 23, 1968, the McNeelys filed a motion in the trial court praying that they be authorized to prosecute the appeal in forma pauperis, and the trial judge signed an order on that date authorizing them to do so. The McNeelys did not file an appeal bond. The record nevertheless was lodged in this court within the extended return date.
Plaintiff concedes that an indigent person may invoke the privilege of litigating without the prior payment of costs at any stage of the proceedings, even after an appeal has been taken, and that the authority to do so includes the right to take a devolutive appeal without furnishing an appeal bond. LSA-C.C.P. arts. 5181 and 5185; Johnson v. Patout, 199 So.2d 199 (La.App. 3d Cir. 1967). He contends, however, that the appellee has the right to traverse the allegations contained in appellant's application for that relief, and that in the instant suit he, as the appellee, was not given the opportunity of traversing the allegations contained in the petition of the McNeelys for authority to proceed in forma pauperis.
Counsel for plaintiff states that he was not furnished with copies of defendants' motion and attached affidavits, or with a copy of the order of the trial court authorizing the McNeelys to proceed in forma pauperis, until after he had filed a motion to dismiss the appeal in this court. He contends that LSA-C.C.P. art. 5184 specifically gives him the right to traverse the allegations contained in defendants' motion and affidavits, that he preferred to traverse them in the district court, and that he now has been deprived of that right since the record has been lodged here. He takes the position that the appeal should be dismissed since he was deprived of his right to traverse the application in the district court.
We are unable to agree that plaintiff is entitled to have the appeal dismissed solely because he was not timely served with copies of the pleadings which were filed by the appellants. He may, at most, be entitled to have the case remanded so as to afford him an opportunity to traverse the allegations contained in the application. See Brewer v. Thoele, 186 La. 168, 171 So. 839 (1937). He has filed no pleadings seeking to have the case remanded, however, and in the arguments made in this court counsel for plaintiff indicates that he does not want a remand.
We conclude that plaintiff is not entitled to have the appeal dismissed on the grounds shown.
Although we have indicated that generally a motion to proceed in forma pauperis may be filed at any stage of the proceedings, we think it is appropriate to add that the granting of the order sought by such a motion will not relieve the appellant of the necessity of furnishing a devolutive appeal bond, nor will it save him from having the appeal dismissed for failure to perfect it, unless the order is granted within the 90 day delay allowed by LSA-C.C.P. art. 2087 for furnishing such a bond. An appellant may not circumvent the time limitations for perfecting an appeal by filing a motion to proceed in forma pauperis after the delays for perfecting the appeal and for furnishing the appeal bond have elapsed. See Wilkerson v. Luneau, 198 So.2d 183 (La.App. 1st Cir.1967). In the instant suit, of course, the order authorizing plaintiff to proceed in forma pauperis was timely issued.
For these reasons, plaintiff's motion to dismiss the appeal taken by the McNeelys is denied.

On the Merits
The accident which resulted in plaintiff's injuries occurred on U. S. Highway 171, in or near Anacoco, Louisiana, on November 27, 1963. Plaintiff was driving his automobile north on that highway, and Mrs. McNeely was driving her automobile south. Without warning, Mrs. McNeely undertook to make a left turn in front of plaintiff's car, and the vehicles collided. *105 Mrs. McNeely was uninsured at the time this accident occurred. Plaintiff, however, was insured by Hartford Accident and Indemnity Company, and the policy provided coverage known as "family protection" or "uninsured motorist coverage."
Plaintiff instituted suit against Mr. and Mrs. McNeely and against his own insurer, Hartford, his action against his insurer being based on the uninsured motorist clause. The case was tried on March 20, 1964, but it was not decided until September 7, 1965. The decree was signed on September 10, 1965. The judgment rendered by the trial court at that time was in favor of plaintiff condemning defendants, in solido, to pay him the sum of $5,000.00, that being the Hartford's limit of liability, and condemning Mr. and Mrs. McNeely to pay the additional sum of $2,500.00.
Defendants timely filed motions for a new trial, alleging: (1) That on June 10, 1964, plaintiff Hyatt executed "releases" in favor of Mr. and Mrs. McNeely, releasing and discharging them from liability for damages resulting from the accident; and (2) that plaintiff had been employed and had worked as a carpenter for a substantial period of time after this case was tried on its merits, thus indicating that plaintiff's injuries were not as serious as had been found by the trial court. These motions for a new trial were overruled by the trial court, and defendants appealed.
On appeal from that original judgment, we concluded that the trial court was correct in holding that defendants were liable to plaintiff, but we reversed the judgment of that court and remanded the case for a new trial "limited to the issues of the quantum of the award and the alleged release of liability executed on or about June 10, 1964." See Hyatt v. Hartford Accident and Indemnity Company, 184 So.2d 563 (La.App. 3d Cir.1966).
After the case was remanded, a number of pleadings were filed by all parties. Included among these pleadings were exceptions of res judicata and no right or cause of action filed by defendants and an amended and supplemental petition filed by plaintiff. In the last mentioned pleading plaintiff alleged that the "releases" executed by him on June 10, 1964, "were obtained through fraud, dishonesty, deceit and misrepresentation" on the part of Mr. and Mrs. McNeely. The exceptions were referred to the merits and the case was tried on the issues for which it was remanded. Thereafter judgment was rendered by the trial judge on October 11, 1968, in favor of plaintiff, condemning defendants to pay to plaintiff the same amounts as had been awarded in the original decree. Defendants appealed, and the matter is before us now on that appeal. As already noted, plaintiff has filed an answer to the appeal, praying that the awards of damages be increased.
The issues presented on this appeal are:
(1) Do the documents which were executed by plaintiff on June 10, 1964, constitute a valid release or remission of the claim which plaintiff is urging in this suit? (2) Should the awards made by the trial court be increased or decreased?
We have already observed that the case was tried originally on March 20, 1964, and it was decided about 18 months later. The evidence shows that sometime after the original trial was completed Mr. and Mrs. McNeely received communications from the Louisiana Department of Public Safety advising that their drivers licenses would be suspended unless they obtained releases from plaintiff and filed them with the Department. During the early part of June, 1964, after these communications were received, the attorney of record for the McNeelys contacted counsel for plaintiff and requested that the latter have plaintiff sign the releases which were required by the Department in order that the McNeelys would not lose their drivers licenses. The request was made "as a personal favor" to counsel for the McNeelys. After one or two other conversations along that line, plaintiff Hyatt signed the forms of releases which had been provided by *106 the Department of Public Safety, and the releases eventually were filed with the Department.
Prior to the signing of these releases, plaintiff's attorney wrote on each form the statement, "All rights reserved against all other parties." Each release was addressed to the Department of Public Safety, and it contained a reference to the above described accident. The releases were identical except for the names of the defendants. The one issued to Mr. McNeely provided:
"RELEASE
(Safety Responsibility Law)
THE UNDERSIGNED HEREBY CERTIFIES THAT he/she is of age of 21 years or over and he/she has released J. W. McNeely, Anacoco, La., from all claims and causes of action of the undersigned arising from the above described accident and authorizes the Department of Public Safety to accept this certification as satisfactory evidence of such release from liability as required by the Safety Responsibility Law. All rights reserved against all other parties."
At the time these releases were signed by Hyatt, counsel for both parties agreed that the releases were executed solely to prevent the McNeelys from losing their drivers licenses, that the releases were not to have the effect of relieving or releasing any of the defendants from plaintiff's claim for damages, that the execution of the releases would not affect the law suit which plaintiff previously had filed against defendants and which had already been tried but not decided, and that the releases would not be pleaded or urged as a defense in this suit. No consideration of any kind was paid to or received by plaintiff for the releases, and the documents do not show that a consideration was paid to any of the parties. And, no releases or remissions in favor of plaintiff were executed by any of the defendants.
After the releases were executed they were mailed to the Department of Public Safety by counsel for plaintiff. The letter which was written to the Department and which accompanied the releases contained the following statement:
"Mr. McNeely did not pay anything for this release and we were willing to have our client sign it for him so he would not have his driver's license revoked and his wife would not have her driver's license revoked."
After the releases had been mailed to the Department of Public Safety, the McNeelys discharged the attorney who had been representing them up to that time, and they engaged their present counsel who had not been a party to the negotiations with Hyatt relative to the releases. Pleadings then were filed in behalf of the McNeelys specially pleading these releases as a defense.
Defendants contend that these two documents constitute a remission of any claim which plaintiff may have against them, and that it thus bars plaintiff from recovering in this suit. They argue also that the trial court erred in considering parol evidence against or beyond what is contained in the written releases. Plaintiff contends primarily that the releases are invalid because no consideration was paid to or received by plaintiff from them. Alternatively he argues that the releases are void because of fraud and mistake.
The evidence establishes that no consideration was paid to or received by plaintiff for these releases. Also, the releases were not executed to put an end to the pending law suit or to adjust the differences between the parties by mutual consent. Neither of these two documents, therefore, can be considered as a "transaction" or a "compromise" within the meaning of LSA-C.C. art. 3071. See Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3d Cir. 1967).
*107 In our opinion each of the two releases constitutes on its face a voluntary "remission" of the debt therein described. LSA-C.C. art. 2130 provides that obligations are extinguished "by voluntary remission." In Bielkiewicz v. Rudisill, supra, we pointed out that a unilateral "release" of a debt, without consideration and without the receipt or exchange of a similar release from the other party, does not meet the legal requirements of a valid compromise which is res judicata between the parties. Plaintiff argues here that the voluntary remission of a claim for damages, where no consideration is paid or received for that remission, does not prevent the person who grants it from asserting his claim for damages.
We find it unnecessary to determine whether the granting of a voluntary remission of a claim for damages, without consideration of any kind, bars the grantor from maintaining a claim later for those damages, because we have concluded that in any event the releases which were executed by plaintiff are ineffective as against him because of fraud.
The evidence establishes that the releases were signed by Hyatt upon the representation made to him, through his attorney, that the granting of these releases would not affect the pending suit and that the documents would not be pleaded or urged as a defense in that suit. The defendants, Mr. and Mrs. McNeely, contrary to that representation, thereafter pleaded the releases as a special defense in the suit, and they have attempted to use them to affect the pending litigation. The action of the McNeelys in making these representations to plaintiff in order to induce him to sign the releases, and then acting contrary to those representations after the releases were executed, constitutes fraud.
We find no merit to defendants' argument that the trial judge erred in considering the parol evidence which was offered to show the circumstances under which the releases were granted. In American Metal Window Company v. St. Tammany Parish School Board, 183 So.2d 667 (La.App. 1st Cir.1966), parol evidence was considered to show the true intention of the parties in executing a written release. The court said:
"Evidence is always admissible to show the circumstances under which the release was executed and the true intention of the parties thereto."
As pointed out by defendants, Art. 2276 of the Civil Code provides that parol evidence may not be admitted against or beyond what is contained in a written act. A well established exception to that rule, however, is that, as between the parties to a written instrument, parol evidence is competent to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties. Gulf States Finance Corporation v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36 (1965). In the instant suit fraud and mistake have been alleged, and parol evidence was admissible to prove the facts which form the basis for those allegations. We have already noted that fraud has been established by the parol evidence which was presented.
Defendants refer us to the axiom that "equity will not aid one who comes into court with unclean hands," and they argue that plaintiff should be barred by this principle of equity from recovering. They take the position that plaintiff practiced fraud and deceit on the Department of Public Safety by executing and sending to that department a release which he knew to be invalid. They cite in support of that argument the following cases: Coker v. Supreme Industrial Life Ins. Co., 43 So.2d 556 (La.App.Orl.Cir.1950); City of New Orleans v. Levy, 233 La. 844, 98 So.2d 210; Dipuma v. Dipuma, 136 So.2d 505 (La.App. 1st Cir.1961); Rhodes v. Miller, 189 La. 288, 179 So. 430 (1938); *108 and Haley v. Badon, 98 So.2d 109 (La. App.Orl.Cir.1957).
We are aware of the rule which defendants seek to apply here, and we note particularly the following language which was used by the Orleans Court of Appeal in Haley v. Badon, supra:
"If the parties were not serious in the matter of the releases and merely executed them to dupe and impose upon the Commissioner of Public Safety in order to forestall the revocation or suspension of their licenses to drive motor vehicles, they would be guilty of moral turpitude by perpetrating such deceit and fraud on the Department of Public Safety as would be inimical to the public safety and nullify the purposes for which the Safety Responsibility Law was enacted. If the parties can be said to have been guilty of such wrongdoing, it would contravene the public policy of this state for the courts to lend judicial aid and comfort to either of them. In such circumstances the law will not concern itself with their differences, but would leave the parties in the position it finds them."
Actually, we are not called upon to determine in this suit whether fraud or deceit was practiced on the Department of Public Safety. Our concern here is whether fraud or deceit was practiced against plaintiff Hyatt by inducing him through false representations to sign the releases. If we find that there was fraud in that respect, then we must determine whether that fraud was sufficient to render the releases ineffective or invalid as against him. Although technically the issue is not before us, we have considered the question of whether plaintiff practiced fraud or deceit toward the Department of Public Safety. We do this because of defendants' contention that plaintiff sought and intended to deceive the Commissioner of Public Safety by "withholding pertinent information" from him, and that he thus comes into court "with unclean hands."
The use of an invalid release to prevent the Department of Public Safety from suspending the drivers license of the McNeelys appears on its face to be fraudulent and deceitful. The letter which was written to that department by counsel for plaintiff, however, specifically recites that no consideration was paid for the release, and that the plaintiff signed it solely to avoid the revocation of the drivers licenses of Mr. and Mrs. McNeely. With that statement, we think the Department of Public Safety was fully informed of the circumstances which surrounded the granting of the releases, and there was no misrepresentation by plaintiff. Certainly no pertinent information was withheld from the Department by plaintiff.
We thus do not find that plaintiff is chargeable with fraud or deceit, and the equitable maxim which defendants seek to invoke is not applicable. The only fraud which has been perpetrated, we think, was that practiced by the McNeelys in representing to plaintiff that the releases would not be used as a defense in the suit, and then violating that representation after plaintiff had been induced to sign them. In our opinion the fraud and deceit practiced by the McNeelys in that instance is sufficient to void the releases.
In fairness to all counsel who have been connected with this litigation, we note here that we find no acts of fraud or ill practice on the part of any of said counsel. The attorney who was representing the McNeelys at the time the releases were executed was subsequently discharged by those defendants, but he at all times has respected and has acknowledged the commitments which he made in their behalf. The attorney who was later employed by the McNeelys was not bound by the commitments made by his predecessor. No contention is made that counsel for plaintiff made any misrepresentations at all.
Our conclusion is that the releases executed by Hyatt are invalid and are ineffective as against him because of fraud and *109 misrepresentation, and that plaintiff thus is not barred from maintaining this action. The trial judge correctly held, therefore, that plaintiff is entitled to recover from defendants for the damages which he sustained as a result of the accident.
We now turn to the issues raised relating to the quantum of the award.
When the case was before us originally we reviewed all of the medical evidence which had been presented up to that time. (See 184 So.2d 563.) At the trial which was held after the case was remanded, defendants produced evidence which showed that plaintiff had been employed and had worked as a carpenter from July, 1964, until at least October, 1965. Thereafter he became a contractor, and he has been engaged as such continuously since that time.
Plaintiff acknowledged that he had been working as a carpenter since the accident occurred, but he testified that he has continued to suffer pain in his back and his leg, and that he has the pain "all the time." He stated that he takes medicine and uses a heating pad to relieve the pain almost daily, but that he has continued to work in spite of the pain because he needs to make a living. His testimony is supported by that of his wife, who stated that she has given him medicine and has administered heat to his back and to his legs almost every night since the date of the accident.
Dr. C. W. Lowrey, an orthopedic surgeon, who examined plaintiff on June 15, 1966, found no objective signs of injury or disability, except for a slight increase in the lordotic curve. He noted that plaintiff had a number of subjective complaints, however, and he stated that for that reason he was unable to make a definitive orthopedic diagnosis.
Dr. C. V. Hatchette, also an orthopedic surgeon, examined plaintiff on March 26, 1966, and found "symptomatic evidence of a herniated disc in the right lumbar spine region." He testified, "I believe that he has some herniation of the disc in the lower right lumbar spine," and he recommended that a myelogram be performed. He observed, however, that plaintiff is able to work, since he is and has been working as a carpenter, and for that reason he feels that he should continue to do so.
The trial judge concluded that plaintiff sustained a severe sprain of the low back, and that he "probably does have a herniated disc." He reasoned that there should not be a great deal of difference between an award for a "probable herniated disc" and an award for an "actual herniated disc," and he thereupon awarded plaintiff the same amount as had been awarded when the case was tried originally.
The conclusions of fact reached by the trial judge are entitled to great weight, especially when those conclusions are based upon an evaluation of the credibility of the witnesses. His conclusions as to the facts, therefore, will not be disturbed unless found to be clearly erroneous. Singleton v. Foodtown, Inc., 195 So.2d 439 (La.App. 3d Cir.1967). Also, the trial judge is vested with much discretion in assessing general damages for personal injuries, and the award made by the trial court for such damages will not be disturbed unless found to be manifestly excessive or manifestly insufficient under all the circumstances. LSA-C.C. art. 1934(3); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
We cannot say that the award made by the trial judge in the instant suit was manifestly excessive or was manifestly insufficient under the circumstances presented here. We thus affirm that award.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearings denied.