MILLER, Judge.
Mr. Cottrell Foster, guest passenger in an automobile driven by Mr. Herman Bazile, seeks damages for personal injuries, medical expenses and loss of earnings, resulting from an accident which unquestionably resulted from Bazile’s negligence.
The principle issue in the case is factual and concerns ownership of the 1960 Oldsmobile which Bazile was driving on March 25, 1966. Plaintiff contends that the car belonged to Midland Motors, Inc., Bazile’s employer, and therefore Midland’s liability insurance was in effect, while defendants contend that the car was sold to Bazile at about 5 :00 p. m. that day. The trial judge held that the vehicle belonged to Bazile and rendered judgment for all defendants. Although Bazile’s estate was made a party defendant, service of process was not properly made.
The tragic accident occurred about 10:00 p. m. on March 25, 1966 when Bazile was, according to plaintiff, allegedly trying out the used car and was driving at an excessive rate of speed. He lost control of the car and struck a culvert, causing his own death and the death of three of his guest passengers. Plaintiff, the sole survivor of this accident, was critically injured.
The evidence shows that for several days prior to March 25, 1966, Herman Ba-zile, who was a mechanic for Midland, had been negotiating to buy an automobile. On that day, the date of his death, he indicated to several of Midland’s employees that he was interested in purchasing a used 1960 Oldsmobile from Midland. Although he wanted a more expensive car, this was all that he could afford.
J. Alton Coco, part owner of Midland, testified that they worked on the deal from about 3:30 p. m. to 5:00 p. m. during which time Bazile agreed to charge his open account for the $150.00 down payment and finance $600.00 with GMAC. Midland did not want to accept Bazile’s 1955 Oldsmobile in trade, and they agreed that when Bazile could sell his own car, he was to pay the $150.00 charged to his open account.
Alton Coco computed the finance charges, the insurance and other fees; *111 took the “Customer’s Statement” information and the driver’s license information, and turned this over to Miss Baudin to type the closing papers. She typed the “Customer’s Statement” (D-2) from a form filled out in part by Mr. Coco and in part by her (D-l), and the Title application (D-3). She also prepared in her own hand the charge slip for the $150.00 down payment (D-5), and Bazile’s ledger sheet with Midland Motors (D-6). The sale and chattel mortgage and note (D-4) was typed by Mr. Alton Coco.
Mr. Alton Coco, part owner of Midland, testified that he saw Bazile sign document D-2 in two places, D-3 in one place, and D^t in three places. Mr. Jeansonne testified that he was in and out of the office while the deal was being consummated, but was certain that he saw Bazile sign the closing papers. Miss Baudin was certain that she showed Mr. Bazile where to sign and that he signed each of these documents. All experts agree that the signatures on documents D-2, 3 and 4 were made by the same person.
These same witnesses agreed that after all the documents were signed, Herman Bazile took the keys to the car and drove it away. The vehicle had Midland’s dealer’s tags, but the application for Bazile’s title and license plates was prepared for mailing. The record suggests that the title was not to be applied for until GMAC paid to Midland the financed portion of this transaction.
After the accident, Mr. Paul Coco reported the facts by telephone to GMAC and was asked if the papers were signed. Mr. Coco said they were and was told to mail them in and the contract would be handled in the regular manner. The finance company (GMAC) recognized the sale, and the credit life insurance on the contract paid the balance due on the sale.
The trial judge’s opinion on this factual issue was as follows:
“The evidence of the plaintiff is the testimony of three bankers from Alexandria, Louisiana, viz., John R. Leavines, associated with Rapides Bank & Trust Company; Robert L. Hopkins with another Bank of Alexandria, Louisiana, and E. C. Beth-ard, a vice president of the Guaranty Bank & Trust Company of Alexandria, Louisiana. And while none of these was familiar with the handwriting and signature of Herman Bazile and did not know him, they were of the opinion that the signatures of Herman Bazile on the sale papers, offered and identified by defendants, as evidence to show a sale completion of the death car to Bazile, before the accident, were not the same as the signature of Herman Bazile on his driver’s license and which was supposedly signed by him. It is doubtful that these men qualified as handwriting experts, except in their field, where they were called upon frequently to identify signatures on checks and notes of their known customers and depositors, whose signatures they knew and whose signature cards were on file in their respective banks. Two, however, had testified as experts in State and Federal Court, in suits where their respective banks were involved and the genuineness of their customers’ signatures were at issue. So, defendants objected to their testifying as experts and the Court admitted their testimony, as experts, subject to the objection of defense counsel.
“The Court considered all of the evidence very carefully. A clear and great preponderance of the evidence is in favor of the defendants. Four people of unquestioned integrity, all personally known to the Court, testified under oath that they had seen Bazile sign the sale papers whereby the death automobile was transferred from Midland Motors to him in the afternoon of March 25', 1966; Bazile had been an employee of Midland for some time; they knew him; they identified his picture, his signature, checks which had been issued to him, etc. They had acted as witnesses to the transaction and had signed as such and all four are positive that these papers were signed by the decedent Bazile, in their presence. Two of these, Jean- *112 sonne and Lou Anne Baudin were no longer with Midland at the time of the trial.
“The handwriting expert, Fortier, testified very positively, that all the documents, including the driver’s license signature, were signed by the same man (Bazile). And he gave very convincing reasons to the Court for his expert opinions. He is rather famous in his field and he contradicted the opinions of the three bankers who said the driver’s license and the other papers were not signed by the same hand. His testimony on that point, in the Court’s mind, is more convincing and reasonable than that of the bankers, who “could not be too sure” of their opinions and generally equivocated rather than being sure. So, when the Fortier testimony and that of the eye-witnesses are put together, the Court must come to the conclusion that the death car had in fact been sold to Bazile and had been delivered to him as owner before the accident. * *
The trial judge did not discuss evidence which casts some doubt on these findings. One of the four witnesses relied on by defendants was Miss Lou Anne Baudin, the secretary for Midland who typed most of the closing papers. While she was certain that she saw Bazile sign all of defendant’s exhibits, except the checks, (exhibits D-15 through 22) about which she was not clear, she admitted that she frequently signed Bazile’s name on the back of pay checks. It is not clear in the record but that some of the checks introduced in evidence by defendant to show Bazile’s genuine signature, might have been endorsed by her. She testified that she frequently (Tr. 501) endorsed the employees’ names on paychecks and cashed the checks for the employees and gave them their money. Mr. J. Paul Coco admitted that the signature on the cancelled checks “could be Herman Ba-zile’s and maybe not.” (Tr. 551). Furthermore, Miss Baudin testified that she signed the name of another of defendant's four witnesses, Mr. J. Alton Coco, on exhibit D-3, admittedly writing his signature as Notary Public on the application for an automobile title and license. Mr. Coco admitted that this was done on some occasions and particularly on this occasion. It is difficult to understand why she would sign Mr. Coco’s notarial signature when Mr. Coco testified that he personally saw Bazile sign this same instrument. There is no question but that Miss Baudin’s signature of Mr. Coco’s name to the title application (D-3) resembles Mr. Coco’s genuine signature as close, if not more closely, than does Bazile’s signature on defendant’s exhibits D-2, 3 and 4 resemble Bazile’s signature on his driver’s license, and other plaintiff’s exhibits. Miss Baudin’s signature of Mr. Coco’s name surely does not resemble her own handwriting. It is therefore abundantly clear that Miss Bau-din has the ability to and frequently does sign the names of other parties.
The fact that Miss Baudin may have endorsed some of Bazile’s pay checks which are in evidence casts great doubt on the testimony of defendants’ expert Mr. Gilbert Fortier, Jr. of New Orleans. Mr. Fortier was certain that the signature endorsing all of pay checks (Exhibits D-15 through 22) as well as on all sale documents were made by the same person who signed Bazile’s name on Bazile’s driver’s license and plaintiff’s other documents. Mr. Fortier was not questioned about and was presumably unaware of Miss Baudin’s facility for duplicating Coco’s, Basile’s and other employees’ signatures.
We do not find Mr. Fortier’s opinion as an expert to be superior to that of the three bankers who testified for plaintiff. In effect, all of them did no more than look at the exhibits and use their experience to make the judgment as to whether the signatures were made by the same party. While Mr. Fortier testified that he had a laboratory with microscopes and extensive photographic equipment, he did not bring one single exhibit to substantiate his opinion. While he does have a high school education, has read many books on the subject of questioned documents, and has testified in many Federal and State Courts, *113 his explanation and reasons for his opinion were no more convincing than were the explanation and reasoning of the three bankers called by plaintiff. Each of these bankers was confronted with the fact that five witnesses would testify positively that the signatures on the defendant’s documents were made by Bazile. Each was asked if this might change his opinion. Each with no equivocation testified that he was of the firm opinion that the signatures on the closing papers were not made by the same person who signed plaintiff’s documents.
A study of the signatures and a careful reading of the testimony of the four experts convinces us that the testimony of the three Alexandria Bankers is the more convincing.
Let us now consider the testimony of the four witnesses who testified that they saw Bazile sign the closing papers on the afternoon of March 25, 1966. Mr. Paul Coco and Mr. Alton Coco are each half owners of Midland Motors. Their liability policy with Great American had limits of $50,000 for one person and $100,000 for one accident. Either on the night of March 25th or early in the morning of March 26th, they learned that their employee Bazile had wrecked the 1960 Oldsmobile and had killed himself and two guest passengers and critically injured two others. According to plaintiff, Bazile was just trying out the car as a continuation of his two weeks of car shopping. If this was true, Great American woitld afford coverage for Ba-zile’s negligence up to $100,000, but there would be no liability by Midland for Ba-zile’s negligence. Massony v. Truett Nash Motor Co., 177 So. 829 (Orleans La.App. 1938). In weighing the interest of these witnesses to determine their credibility, it is noted that they had very little to gain and a great deal to lose from possible criminal charges, should they permit and rely on a forgery of the exhibits which are in evidence as D-2, 3 and 4.
Mr. Paul Coco testified by deposition that he was not certain that he saw Bazile sign the closing papers, but that he did recognize Bazile’s signature. He knew-that Bazile was in the process of buying the 1960 Oldsmobile and was certain that all of the papers were completed before Bazile drove away in the 1960 Oldsmobile. At the trial, Mr. Paul Coco testified that he saw Bazile sign the closing papers.
Mr. Alton Coco testified both by deposition and at the trial that he saw Bazile sign all the closing papers on the afternoon of March 25, 1966. His credibility is attacked on the grounds that he permitted Miss Baudin to sign his Notarial signature to the license and title application (Exhibit D-3).
Miss Lou Anne Baudin testified both by deposition and at the trial that she saw Ba-zile sign all the closing papers ^on the afternoon of March 25, 1966. Her credibility is attacked in that she frequently duplicated Bazile’s signature by endorsing his pay checks, and that she duplicated Alton Coco’s signature on Exhibit D-3.
Mr. Nicholas Jeansonne testified both by deposition and at the trial that he saw Ba-zile sign all the closing papers on the afternoon of March 25, 1966. When he testified both by deposition and at the trial, he was no longer associated with Midland, but had gone into the used car business on his own. There was no basis to attack Mr. Jeansonne’s credibility.
We find this to be a most difficult case on the factual issue. While the expert testimony preponderates in favor of plaintiff, we cannot find manifest error in the trial judge’s conclusion that three witnesses who consistently testified that they saw Bazile sign the closing papers did not commit perjury. To reverse, we would necessarily find that these three witnesses were a party to the forging of documents after the tragic accident and thereby defrauded not only this plaintiff, but the families of the three deceased guest passengers, as well as defrauding the insurance company that paid life insurance benefits to Bazile’s family on the allegedly forged instruments. *114 All for very little financial gain or none at all. •
The conclusions of fact reached by the trial judge are entitled to great weight, especially when those conclusions are based upon an evaluation of the credibility of the witnesses. His conclusions as to the facts, therefore, will not be disturbed unless found to be clearly erroneous. Hyatt v. Hartford Accident and Indemnity Co., 225 So.2d 102 (La.App.3rd Cir.1969); Singleton v. Foodtown, Inc., 195 So.2d 439 (La. App.3rd Cir.1967).
The judgment of the trial court is affirmed. All costs are to be paid by appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.